Robert J. Brener (RB 3764)
Arjun D. Shah (906392012)
DUANE MORRIS LLP
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932-1007
(973) 424-2000
*Attorneys for Plaintiff Fulton Bank, N.A.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FULTON BANK, N.A., | Civil Action No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| RAHWAY AUTO RESOURCES INC. ALEXIS P. COLLANTES, JOSE E. COLLADO, LEE V. MORANT, JR., AVENUE MOTORS LLP, and TRINITY MCC REALTY, LLC, | |
| Defendants. | |

Plaintiff, Fulton Bank, N.A. ("Fulton"), by its attorneys, Duane Morris LLP, brings this Complaint against Defendants Rahway Auto Resources Inc. ("Rahway"), Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Trinity MCC Realty (collectively, the "Defendants"), and alleges as follows:

**STATEMENT OF THE CASE**

1.      Fulton provides floorplan inventory financing to dealerships for the purchase and sale of new and used vehicles. In general, such lending is made possible through loan agreements providing for an open-ended credit arrangement secured by the floorplanned vehicles themselves and often, as is the case here, by non-floorplanned vehicles and other business assets of the dealership borrower. Often, dealerships' owners and other related entities must personally

guaranty the obligations of the dealerships as an additional protection for the lender's extension of credit.

2. In the instant case, a particular dealership, Rahway, has defaulted on its obligations under its loan agreements and the other Defendants have defaulted under guaranties to pay Rahway's obligations. Rahway's defaults are material, including the failure to repay its obligations upon a demand by Fulton and the sale of a significant number of vehicles without repayment to Fulton in violation of the loan agreements. The foregoing defaults have caused immediate, severe, and ongoing damage to Fulton, for which Fulton is entitled to be made whole by the payment of money damages and the immediate possession of Rahway's vehicle inventory pursuant to the parties' loan documents, common law, and New Jersey's Uniform Commercial Code.

## **PARTIES**

3. Fulton is a national bank association organized under the laws of the United States of America. For purposes of diversity jurisdiction, a national bank association is a citizen of the state in which it has its main office.

4. Fulton's main office is located at One Penn Square, P.O. Box 4887, Lancaster, Pennsylvania, 17602. Accordingly, Fulton is a citizen of Pennsylvania for purposes of determining diversity jurisdiction.

5. Upon information and belief, Rahway is a New Jersey corporation, with a principal place of business at 1500 Highway US 1, Rahway, New Jersey, 07065-5622.

6. Upon information and belief, Alexis P. Collantes is an individual residing at 1681 Raritan Road, Scotch Plains, New Jersey 07076-2937 and is a principal and guarantor of Rahway.

7. Upon information and belief, Jose E. Collado is an individual residing at 295 Wilson Avenue, Township of Washington, New Jersey 07676-4728 and is a guarantor of Rahway.

2

8.  Upon information and belief, Lee V. Morant, Jr. is an individual residing at 1 Lowell Place, West Orange, New Jersey 07052-3711 and is a guarantor of Rahway.

9.  Upon information and belief, Avenue Motors LLP is a New Jersey corporation, with a principal place of business at 1453 Lawrence Street, Rahway, New Jersey 07065-5177, and is a guarantor of Rahway.

10. Upon information and belief, Trinity MCC Realty LLC is a New Jersey corporation, with a principal place of business at 374 Sylvan Avenue, Englewood Cliffs, NJ 07632, and is a guarantor of Rahway.

## JURISDICTION AND VENUE

11. The United States District Court for the District of New Jersey possesses diversity jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

12. The United States District Court for the District of New Jersey, Newark vicinage, is the proper venue for this action because this is the judicial district where the collateral for the debt is located and where Rahway conducts the business at issue in this action.

## STATEMENT OF FACTS

I.   **The Loan Agreements**

13. On or about January 31, 2023, Fulton and Rahway entered into a certain Loan Agreement, not to exceed the principal sum of Fourteen Million Dollars ($14,000,000.00) (the "Floorplan" or "Loan"). A true and accurate copy of the Loan Agreement is attached hereto as Exhibit A and incorporated herein by reference.

14. On or about January 31, 2023, Fulton issued a Line of Credit Note payable to the order of Rahway in the principal amount of Fourteen Million Dollars ($14,000,000.00) to evidence

and provide certain payment terms for the Loan (the "Note"). A true and accurate copy of the Note is attached hereto as Exhibit B and incorporated herein by reference.

15.     The Line of Credit provides floorplan financing for the purchase of new and used vehicles. The credit line limit is $6,000,000.00 for new vehicles and $8,000,000.00 for used vehicles. *Id*.

16.     On or about January 30, 2023, Fulton and Rahway entered into a Security Agreement, wherein as security for the due and punctual payment of the Loan and for all of the "Obligations" as defined therein, Rahway grants to Fulton a first-priority security interest in all of Rahway's property (the "Collateral"). A true and accurate copy of the Security Agreement is attached hereto as Exhibit C and incorporated herein by reference. *See* § 2; *see also*  Exhibit B, p, 4 (section entitled "Collateral") ("This Loan is secured by the collateral described in the Security Agreement of even date with this Note including all assets and personal property of the Borrower.").

17.     The Loan Agreement, the Note, and the Security Agreement together constitute the "Loan Agreements."

## II.     Fulton Has A First-Priority Security Interest In Collateral Including All Vehicles.

18.     The Collateral is defined in the Security Agreement as including: "all of [Rahway's] personal property and assets whether now owned or hereafter acquired, created or arising and wherever located including all accounts, chattel paper, documents, instruments, inventory, general intangibles, equipment, fixtures, deposit accounts, goods, letter of credit rights, supporting obligations, investment property, commercial tort claims, all property of debtor, now or hereafter in Secured Party's possession, and proceeds (including, without limitation, insurance proceeds), whether cash or non-cash, of all of the foregoing property, and all motor vehicles, all

DM3\22528763.1

general intangibles (including payment intangibles, books and records) relating to or arising from the motor vehicles; all supporting obligations of all of the foregoing property; all cash and non-cash proceeds (including insurance proceeds) of all of the foregoing property, all products thereof and all additions and accessions thereto whether or not installed in, related, attached or added to or used in connection with any motor vehicle, substitutions therefor and replacements thereof." *See* Exhibit C, § 1.1

19.     Section 2 of the Security Agreement grants Fulton a continuing lien on and first-priority security interest in the Collateral. *Id*., § 2.

20.     Pursuant to the Loan Agreement, Rahway represented it has good and marketable title to the Collateral free and clear of all liens and encumbrances, that it has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of the Loan and Note, that would be prior or that may in any way be superior to Fulton's security interests and rights in and to such Collateral. *See* Exh. A, § 1.6.

21.     On February 1, 2023, Fulton filed a UCC Financing Statement with the New Jersey Department of Treasury covering all of Rahway's personal property and assets. A true and correct copy of the UCC Financing Statement and a UCC search is attached hereto as <u>Exhibit D</u> and incorporated herein by reference. Accordingly, Fulton's security interest in all Collateral including all vehicles, is perfected.

**III.     The Note Is Payable Upon Demand; Floorplan Advances
<u>To Be Repaid Within Eight Business Days Of The Vehicle Sale</u>.**

22.     Rahway agreed that "[t]he outstanding principal balance and any accrued but unpaid interest shall be due and payable <u>on demand</u> by [Fulton]." *See* Exh. B, p. 3 ("Payment Terms") (emphasis added).

23.    Rahway also agreed that it shall pay to Fulton "without demand an amount equal to the amount advanced under the Loan to finance the purchase of a motor vehicle within eight (8) business days of the date on which Rahway sold such motor vehicle." *Id*. ("Payment Upon Sale of Motor Vehicles"). Rahway's failure to remit the required amount to Fulton within the eight-business-day period is deemed a sale out of trust ("SOT").

24.    The Loan, in addition to being payable on demand, is subject to an annual review. The first annual review was May 1, 2023, and thereafter on May 1 of each year. *Id*. ("Annual Review").

**IV.    A Failure To Pay On Demand And Floorplan Advances Constitute Events of Default.**

25.    An **"Event of Default"** occurs under the Note upon, among other things, (i) "the nonpayment of any principal, interest or other indebtedness under this Note when due; (ii) the occurrence of any event of default or default and the lapse of any notice or cure period under any Loan Document or any other debt, liability or obligation to [Fulton] of [Rahway];. . . (viii) any material adverse change in [Rahway's] business, assets, operations, financial condition or results of operations; . . . or (xiii) [Rahway's] failure to observe or perform any covenant or other agreement with [Fulton] contained in any Loan Document or any other documents now or in the future evidencing or securing the obligations of [Rahway] to [Fulton]. . ." *Id*. at p. 5 ("Events of Default") (emphasis added).

26.    An "Event of Default" occurs under the Security Agreement upon: "(a) any Event of Default (as defined in any of the Obligations); (b) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (c) demand by [Fulton] under any of the Obligations that have a demand feature; (d) the failure by [Rahway] to perform any of its

6

obligations under this Agreement; (e) falsity, inaccuracy or material breach by [Rahway] of any written warranty, representation or statement made or furnished to [Fulton] by or on behalf of [Rahway]; . . . or (i) if [Fulton] otherwise deems itself insecure." *See* Exh. C, § 9 (emphasis added).

### V. Fulton Entitled To Payment In Full And Immediate Possession Of Vehicles Upon An Event of Default.

27. Under the Note upon the occurrence of an Event of Default: "(a) [Fulton] shall be under no further obligation to make advances hereunder; . . . (c). . . the outstanding principal balance and accrued interest hereunder together with any additional amounts payable hereunder, at [Fulton's] option and without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) at [Fulton's] option, this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (e) [Fulton] may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law." Exh. B, p. 6 ("Events of Default").

28. Further under the Note, Rahway "agrees to pay on demand, to the extent permitted by law, all costs and expenses incurred by [Fulton] in the enforcement of its rights in this Note and in any security therefor, including without limitation reasonable fees and expenses of [Fulton's] counsel." *Id*. ("Miscellaneous").

29. Under the Security Agreement, upon the occurrence of any such Event of Default and at any time thereafter, Fulton may declare all Obligations "immediately due and payable and shall have, in addition to any remedies provided herein or by any applicable law or in equity, all the remedies of a secured party under the UCC. [Fulton's] remedies include, but are not limited to, the right to (a) peaceably by its own means or with judicial assistance enter [Rahway's] premises and take possession of the Collateral without prior notice to [Rahway] or the opportunity for a hearing, (b) render the Collateral unusable, (c) dispose of the Collateral on [Rahway's]

premises, (d) require [Rahway] to assemble the Collateral and make it available to [Fulton] at a place designated by [Fulton], . . . . *Id*. at § 10 (emphasis added).

30.    Further, Fulton is entitled to "[e]xpenses of retaking, holding, preparing for sale, selling or the like shall include [Fulton's] reasonable attorney's fees and legal expenses, incurred or expended by [Fulton] to enforce any payment due it under this Agreement either as against [Rahway], or in the prosecution or defense of any action, or concerning any matter growing out of or connection with the subject matter of this Agreement and the Collateral pledged hereunder." *Id*.

**VI.    The Other Defendants Executed Guaranties
       Requiring Payment Of Rahway's Obligations.**

31.    In connection with the Loan Agreements, on January 30, 2023, Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Trinity MCC Realty, LLC (together, the "Guarantors") each executed a Guaranty. A true and correct copy of each of the Guaranties is attached hereto as Exhibit E and incorporated herein by reference.

32.    Each Guarantor "unconditionally guarantees, and becomes surety for, the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owing by [Rahway] to [Fulton] of any kind or nature, present or future . . . direct or indirect . . . absolute or contingent, joint or several, due or to become due, now existing or hereafter arising . . . . and all costs and expenses of [Fulton] incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the "**Obligations**") (emphasis in original).  *See*, *e.g.*, Exh. E, § 1 (emphasis added).

33.    In addition, each of the Guaranties states:  "This is a guaranty of payment and not of collection and [Fulton] shall not be required, as a condition of the Guarantor's liability, to make any demand upon or to pursue any of its rights against [Rahway], or to pursue any rights which

may be available to it with respect to any other person who may be liable for the payment of the Obligations. *Id*. at § 2.

34. Further, each of the Guaranties states: "This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full, and [Fulton] has terminated this Guaranty. *Id*.

35. Finally under the Guaranties, "the occurrence of any of the following shall be an **"Event of Default"**: (i) any Event of Default (as defined in any of the Obligations); . . . (iii) the Guarantor's failure to perform any of its obligations hereunder . . . Upon the occurrence of any Event of Default, (a) the Guarantor shall pay to [Fulton] the amount of the Obligations; (b) [Fulton] in its discretion may exercise with respect to any collateral any one or more of the rights and remedies provided a secured party under the applicable version of the Uniform Commercial Code; and (c) [Fulton] in its discretion may exercise from time to time any other rights and remedies available to it at law, in equity or otherwise. *Id*. at § 6. (emphasis in original).

**VII.  Rahway Refused To Pay The Floorplan Balance Upon Demand, And Failed To Timely Pay Advances.**

36. On January 30, 2024, and in accordance with the Loan Agreements, Fulton advised Rahway in writing that Fulton would not be renewing the Note on the Maturity date of May 1, 2024. In order to enable Rahway to obtain other financing, Fulton gave Rahway until June 26, 2024 to pay off the amounts outstanding under the Note (i.e., the Floorplan). A true and correct copy of the January 30, 2024 notice is attached hereto as Exhibit F and incorporated herein by reference.

37. Rahway failed to pay off the Floorplan by June 26, 2024. Thereafter on July 3, 2024, Fulton sent Rahway a Notice of Default notifying Rahway that its failure to pay the Floorplan constituted a default under the Loan Agreements. Notwithstanding the default, Fulton

9

agreed not to exercise its rights and remedies under the Loan Agreements and to extend Rahway's time to pay off the Floorplan until August 15, 2024.

38.    Rahway failed to pay the outstanding Floorplan balance by August 15, 2024.

39.    Thereafter, Rahway sold floor-planned vehicles but failed to timely pay Fulton the advances, which failure to pay also constitutes an Event of Default under the Loan Agreements.

40.    In particular, Rahway failed to pay $469,253.45 in floorplan advances on used and new vehicles.

41.    Rahway's failure to pay Fulton, in addition to constituting Events of Default suggests either (a) an inability to make payments when due, which is a "material adverse change in [Rahway's] business, assets, operations, financial condition or results of operations," and itself an Event of Default; or (b) an intentional, deliberate, and deceptive decision to refuse to repay Fulton and instead retain sale proceeds for itself. Under either scenario, Fulton does not believe it can be made whole and "deems itself insecure." Exh. C, § 9.

42.    On November 7, 2024, Fulton, through its counsel, demanded Rahway pay Fulton the advances, the principal balance of which was $469,253.45. A copy of the letter was sent to Mr. Collantes, Mr. Morant, Mr. Collado, Avenue Motors LLP and Trinity MCC Realty, LLC because each is liable in full for the Obligations pursuant to the Guaranties. In the letter, Fulton also demanded payment from the Guarantors in full.  A true and accurate copy of the November 7, 2024 Notice of Default is attached hereto as Exhibit G and incorporated herein by reference.

**VIII.   Rahway's Continued Failure to Pay and Recent Violations of the Loan Agreements Including Selling Vehicles Without Payment.**

43.    Fulton communicated with Rahway that notwithstanding the demand for payment in full and Rahway's Events of Default, it would not immediately proceed with enforcement.

DM3\22528763.1

44.    On October 24, 2025, Fulton affirmed in writing to Rahway and Defendants its demand for payment in full of all loans and other obligations under the Loan Agreements, including accrued interest and costs of collection including attorneys' fees. Fulton informed Rahway that it would refrain from exercising its rights to enforce the demand until December 31, 2025, but it expressly reserved the right to enforce at any time.  A true and correct copy of the October 24, 2025 demand is attached hereto as Exhibit H and incorporated herein by reference.

45.    A copy of the letter was sent to Mr. Collantes, Mr. Morant, Mr. Collado, Avenue Motors LLP and Trinity MCC Realty, LLC because each is liable in full for the Obligations pursuant to the Guaranties. In the letter, Fulton also demanded payment from the Guarantors in full. *Id.*

46.    Thereafter, during an audit conducted on or about February 5, 2026, Fulton discovered that Rahway sold 117 vehicles without repayment to Fulton in the amount of $5,140,660.00.

47.    On February 25, 2026, Fulton wrote to Rahway and the other Defendants demanding payment. In addition to Rahway's failure to pay off the outstanding Floorplan balance, Fulton notified them that Rahway's additional failure to pay Fulton for advances on vehicles sold as required under the Loan Agreements constitutes an Event of Default under the Note, giving rise to the Bank's right and remedies under the Loan Agreements. Fulton demanded immediate payment of the outstanding Floorplan balance and all other obligations under the Loan Agreements, including accrued interest. A true and correct copy of the February 25, 2026 Demand for Payment is attached hereto as Exhibit I and incorporated herein by reference.

48.    The sold but not paid list is growing. During a March 19, 2026 audit, Fulton identified 213 vehicles sold by Rahway but Rahway has not paid Fulton the sale proceeds. The

11

outstanding principal balance of these 213 vehicles is $8,826,833.67. Rahway's failure to pay Fulton for these sold vehicles constitutes an Event of Default under the Loan Agreements.

49.    Fulton conducted another audit on April 2, 2026. Fulton identified 242 vehicles sold by Rahway but Rahway has not paid Fulton the sale proceeds. The outstanding principal balance of these vehicles is $10,428,495.18. Rahway's failure to pay Fulton for these sold vehicles constitutes an Event of Default under the Loan Agreements. A true and correct copy of the April 2, 2026 audit results is attached hereto as Exhibit J and incorporated herein by reference.

50.    On April 7, 2026, Fulton wrote to Alex Collantes, Jose Collado and Lee Morant. Fulton restated that Rahway had defaulted under the Loan Agreements and that the SOT was growing. Fulton warned that unless Rahway provided written commitment showing a source of funds to pay off the SOT, Fulton would proceed to exercise its rights and remedies. A true and correct copy of the letter is attached as Exhibit K and incorporated herein by reference.

51.    Fulton conducted another audit on April 15, 2026. Fulton identified 252 vehicles sold by Rahway but Rahway has not paid Fulton the sale proceeds. The outstanding principal balance of these vehicles is $10,860,780.02. Rahway's failure to pay Fulton for these sold vehicles constitutes an Event of Default under the Loan Agreements. There are another six vehicles missing. The outstanding principal balance of those vehicles is $277,858.22. A true and correct copy of the April 15, 2026 audit results is attached hereto as Exhibit L and incorporated herein by reference.

52.    Rahway has not made any payment toward the SOT.

## IX.    Rahway's Vehicle Inventory.

53.    Rahway has inventory consisting of floorplanned vehicles and non-floorplanned vehicles (together, the "Vehicle Collateral").

12

54.     Based on its most recent audit, Fulton believes that Rahway has inventory consisting of at least 60 new and used vehicles, including demonstrators and loaners, that have been floorplanned by Fulton (the "Floorplan Vehicle Collateral"). The outstanding Floorplan balance on the Floorplan Vehicle Collateral is $2,632,777.76. *See* Exhibit M for a true and correct copy of the Floorplan Vehicle Collateral incorporated herein by reference.

55.     Fulton believes that several of the Floorplan Vehicle Collateral have been or will be moved to one or more dealerships owned in whole or in part by one or more of Rahway's owners or guarantors or other locations.

56.     Fulton believes that Rahway also has at least 45 vehicles that have not been floorplanned by Fulton (the "Non-Floorplan Vehicle Collateral"). The Blue Book Wholesale value of the Non-Floorplan Vehicle Collateral is approximately $1,431,950.00. A true and correct spreadsheet showing the Non-Floorplan Vehicle Collateral is annexed hereto as Exhibit N and incorporated herein by reference.

57.     While not floorplanned by Fulton, the Non-Floorplan Vehicles constitute Collateral under the parties' Loan Agreement and are therefore subject to Fulton's first-priority security interest in Collateral. Fulton is entitled to possession of the Non-Floorplan Vehicles under the Loan Agreements and the UCC. *Id*., Exh. C.

58.     The Non-Floorplan Vehicle Collateral may include vehicles held on consignment by Rahway and other vehicles in which third-parties may claim an interest. However, Fulton has not received a notice of consignment or a notice of a purchase money security interest related to Rahway from any person.

59.     The interests of the consignors (other than individuals consigning vehicles that were consumer goods immediately before delivery to Rahway) and third-parties in the Non-Floorplan Vehicle Collateral are subordinate to Fulton's first-priority security interest in them.

60.     Because consignors and third-parties will likely claim an interest in the Non-Floorplan Vehicle Collateral, once this action is commenced there is a strong likelihood that the Non-Floorplan Vehicle Collateral will be immediately concealed, moved, sold, or transferred to consignors, third-party lenders, or innocent third-party consumer purchasers before Fulton can take possession.

61.     Rahway's Vehicle Collateral is by far Rahway's largest asset and the security for the Floorplan advances by Fulton.

62.     Rahway's failure to pay Fulton and the sheer size of amount owed Fulton for vehicles sold but unpaid ($10,860,780.02) suggests either (i) an inability to make payments when due, which is a "material adverse change in [Rahway's] business, assets, operations, financial condition or results of operations," (Exh. B); or (ii) an intentional, deliberate, and deceptive decision to refuse to repay Fulton and instead retain sale proceeds for itself. Under either scenario, Fulton is not going to be paid by Defendants.

63.     Further, Rahway's refusal to comply with Fulton's written demands impairs Fulton's first-priority security in the Collateral and reinforces that Rahway intends to sell Vehicle Collateral without repayment to Fulton. Rahway will continue to dissipate Vehicle Collateral at Fulton's expense.

64.     As a result, Fulton faces immediate injury consisting of the continuing erosion of its security interest in the Vehicle Collateral, as well as the lost opportunity to obtain the amounts

14

due and owing from the sale of said Collateral. The injury is also irreparable, as Rahway is without any significant assets, other than the Collateral, from which Fulton can recover the amounts owed.

65. The Vehicle Collateral is capable of concealment or of rapid removal from the State of New Jersey and easily transferred to innocent third-party consumer purchasers. Indeed, Rahway has already demonstrated its willingness to sell, alienate, and/or dissipate the Vehicle Collateral without repaying Fulton. Without restraints in place, the Vehicle Collateral is likely to be misused, lost, sold, or otherwise disposed.

66. Fulton's only chance to recoup a portion of its losses is to take possession of the Vehicle Collateral. As a result, it seeks immediate turnover of the Non-Floorplan Vehicle Collateral and restrictions and limitations in place with respect to sale of the Floorplan Vehicle Collateral before it, too, is turned over to Fulton.

67. The total outstanding balance due Fulton is $13,695,509.84, which consists of the total principal balance of $13,485,239.54 (the sum of the principal balances of the SOT vehicles, the Floorplan Vehicle Collateral, and the vehicles sold but not due), interest of $180,055.78, per diem of $2,530.15, satisfaction fees of $41.00, attorneys' fees of $29,237.00 and costs of $936.52.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Rahway)

68. Fulton hereby incorporates the allegations contained in paragraphs 1 through 67 as if fully set forth herein.

69. Rahway has breached the terms of the Loan Agreements by, among other things, failing to make payments to Fulton upon demand and when due thereunder, impairing Fulton's first-priority security in the Collateral, causing Fulton to deem itself insecure with regard to payment of Rahway's payment obligations and to reasonably believe that Fulton's Collateral is in danger of misuse, loss, seizure or confiscation, and substantial damage, permitting other creditors

15

to take and exercise against Fulton's Collateral, and not conducting its business affairs in a reasonable and prudent manner. These breaches constitute Events of Default under the Loan Agreements.

70.     Fulton has performed all obligations owed to Rahway, except those obligations Fulton was prevented or excused from performing as a result of Rahway's breaches.

71.     As a direct result of Rahway's breaches, Fulton has been made to suffer pecuniary damages in an amount exceeding $13,695,509.84, plus accruing interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against Guarantors)

72.     Fulton hereby incorporates the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73.     As a result of Rahway's breach of its obligations under the Loan Agreements, the Guarantors became immediately responsible for the outstanding principal balance, plus accrued interest, attorneys' fees, and costs due thereunder.

74.     The Guarantors have breached their obligations under their Guaranties, which breaches have caused Fulton to suffer pecuniary damages.

75.     The Guarantors expressly agreed to pay Fulton's reasonable attorneys' fees and the costs of any action instituted to collect upon the default of Rahway.

76.     As a direct result of the Guarantors' breach of the Guaranties, there is due and owing from the Guarantors an amount exceeding $13,695,509.84, plus accruing interest, attorneys' fees, and costs, pursuant to the terms of the Guaranties.

## THIRD CAUSE OF ACTION
### (Replevin)

77.    Fulton hereby incorporates the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

78.    Fulton owns, possesses, and still retains a duly perfected first priority security interest in and has the right to immediate possession of the Collateral.

79.    Fulton demands immediate possession of the Collateral pursuant to the terms of the Loan Agreements. Fulton is also entitled to possession of the Collateral pursuant to N.J.S.A. § 12A:9-609(b).

80.    Upon information and belief, all of the Collateral remains in the possession of Rahway.

81.    Fulton's interest therein will be adversely affected by the continued possession of the Collateral by Rahway.

82.    Fulton is entitled to replevy the Collateral, namely:

a)    possession of Floorplan Vehicle Collateral from all locations where they are currently stored, including demonstrators and service loaners, as identified by Vehicle Identification Number in Exhibit M; and surrender same to Fulton for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in accordance with applicable law.

b)    possession of Non-Floorplan Vehicle Collateral stored and held by Rahway, as identified by Vehicle Identification Number in Exhibit N, for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in

accordance with applicable law. Notwithstanding the foregoing, Fulton shall not take possession of any vehicle identified in Exhibit L that has been consigned to Rahway by a consumer obligor and constitutes a consumer good as defined under UCC § 12A:9-102; and

c)      possession of Rahway's equipment, fixtures and furniture, tools, supplies, parts, and accessories, and surrender same for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in accordance with applicable law.

**FOURTH CAUSE OF ACTION**
**(Recovery of Security and Injunctive Relief)**

83.     Fulton hereby incorporates the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84.     As security for all amounts due and owing to Fulton, as memorialized in the terms of the Loan Agreements, Rahway pledged certain of the goods, parts, and materials of its business, specifically, and without limitation, the Collateral.

85.     On information and belief, the Collateral is located at, and situated within or on, that parcel of land commonly identified as 1500 US Highway 1, Rahway, NJ 07065.

86.     Fulton has declared Rahway in default pursuant to the terms of the Loan Agreements and the Guaranties.

87.     On information and belief, the Collateral has not been taken for a tax, assessment, or fine pursuant to law, or under an execution or attachment against property of Fulton.

18

88.     Most if not all of the Vehicle Collateral came into possession of Rahway through purchase transactions financed by Fulton.

89.     Portions of the Collateral, such as the Vehicle Collateral, are capable of concealment or of rapid removal from the State of New Jersey and easily transferred to innocent third-party consumer purchasers. Indeed, Rahway has already demonstrated its willingness to sell, alienate, and/or dissipate the Collateral without repaying Fulton.

90.     As a direct result of Rahway's continued refusal to remit the proceeds therefrom to Fulton, Fulton has been made to suffer pecuniary damages in the amounts set forth herein, and in a specific amount according to proofs. Fulton deems itself inadequately protected.

91.     The Loan Agreements provide for the recovery of attorneys' fees and costs in the event of default. Fulton has incurred attorneys' fees and costs as a result of the defaults of Defendants, and as a result of Rahway's continued disposal of Collateral and refusal to remit the proceeds from the sale of any Collateral to Fulton.

92.     The refusal of Rahway to remit the proceeds from the sale of any Collateral is wrongful and a violation of Fulton's rights under the Loan Agreements.

93.     Accordingly, Fulton is entitled to a temporary restraining order, preliminary injunction, and permanent injunction, enjoining Defendants and Defendants' respective agents, servants, employees, representatives, and all other persons acting under the aegis of, in concert with, or for Defendants, from leasing, selling, transferring, consigning, auctioning, dissipating, concealing, pledging, granting a security interest in, or otherwise disposing of, any of the Vehicle Collateral on which Fulton holds a security interest in pursuant to the Loan Agreements entered between the parties unless:

DM3\22528763.1

a)      Fulton's representatives, who may be Fulton employees or third party contractors, are permitted unrestricted access to Rahway's place of business at all times including particularly during all business hours in order to conduct inventory and financial audits and to collect proceeds in kind and observe operations, and to allow such representatives to remain on Rahway's premises, and hold all manufacturer's statements of origin, title certificates, bills of sale, and keys for all vehicles (allowing for use of keys for bona fide test drives);

b)      Fulton is permitted to deploy guards or security personnel, who may be Fulton employees or third-party contractors, on the property at all times, day and night, to prevent third-parties, including those who claim to have an interest in Collateral, including Vehicle Collateral, from removing Collateral from Rahway;

c)      Defendants immediately and before conclusion of any transaction report all sales or leases of Vehicle Collateral to Fulton;

d)      Defendants immediately remit to Fulton in the form of certified or other immediately available funds the anticipated proceeds from sales of Vehicle Collateral in amounts no less than:

20

(i) the floorplan balance for floorplanned vehicles; and

(ii) the wholesale book value for non-floorplanned vehicles, in all cases, before the sold vehicle is released or delivered to a customer;

e) Defendants turn over all manufacturer's statements of origin, title certificates, bills of sale, and keys relating to Fulton's Vehicle Collateral and deliver a power of attorney executed by Rahway permitting Fulton to execute, endorse and deliver in the Borrower's name any and all manufacturer's certificates of origin, title certificates, bills of sale and all other documents required by any department of motor vehicles or any other agency of any state or governmental authority, for the transfer of ownership of all vehicles of the purchasers thereof at any sale or other disposition, and for the purpose of adding Fulton as a lienholder on title where Fulton may deem such action appropriate;

f) Defendants pay Fulton for the cost of its representation, as a cost of collection of the Loan, and permitted by the Loan Agreements; and

g) Rahway's vehicles, including vehicles located at other dealerships and in use as dealer demos and service loaners, be returned to and retained at Rahway's location (except for bona fide test drives).

21

**PRAYER FOR RELIEF**

**WHEREFORE**, Fulton asks that the Court order:

94.     Damages in the minimum amount of $13,695,509.84 plus accruing interest, and costs and fees.

95.     Possession of Floorplan Vehicle Collateral from all locations where they are currently stored, including demonstrators and service loaners, as identified by Vehicle Identification Number in Exhibit M; and surrender same to Fulton for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in accordance with applicable law.

96.     Possession of Non-Floorplan Vehicle Collateral stored and held by Rahway, as identified by Vehicle Identification Number in Exhibit N, for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in accordance with applicable law. Notwithstanding the foregoing, Fulton shall not take possession of any vehicle identified in Exhibit N that has been consigned to Rahway by an individual and constitutes a consumer good of such individual pursuant to UCC § 12A:9-102; and

97.     Possession of Rahway's equipment, fixtures and furniture, tools, supplies, parts, and accessories, and surrender same for the purpose of lease, sale, or other disposition to be accomplished in a commercially reasonable manner and in accordance with applicable law.

98.     In the interim, a temporary restraining order, preliminary injunction, and permanent injunction, enjoining Defendants and Defendants' respective agents, servants, employees, representatives, and all other persons acting under the aegis of, in concert with, or for Defendants, from leasing, selling, transferring, consigning, auctioning, dissipating, concealing, pledging,

22

DM3\22528763.1

granting a security interest in, or otherwise disposing of, any of the Collateral on which Fulton holds a security interest in pursuant to the Loan Agreements entered between the parties unless:

a) Fulton's representatives, who may be Fulton employees or third party contractors, are permitted unrestricted access to Rahway's place of business in order to conduct inventory and financial audits and to collect proceeds in kind and observe operations;

b) Defendants immediately and before conclusion of any transaction report all sales or leases of Collateral to Fulton;

c) Defendants immediately remit to Fulton in the form of certified or other immediately available funds the anticipated proceeds from sales of Vehicle Collateral in amounts no less than:

(i) the floorplan balance for floorplanned vehicles; and

(ii) the wholesale book value for non-floorplanned vehicles,

in all cases, before the sold vehicle is released or delivered to a customer; and

d) Defendants turn over all manufacturer's statements of origin, title certificates, bills of sale, and keys relating to Fulton's Collateral and deliver a power of attorney executed by Rahway permitting Fulton to execute, endorse and deliver in the Borrower's name any and all manufacturer's certificates of origin, title certificates, bills of sale and all other documents required by any department of motor vehicles or any other agency of any state or governmental authority,

23

for the transfer of ownership of all vehicles of the purchasers thereof at any sale or other disposition, and for the purpose of adding Fulton as a lienholder on title where Fulton may deem such action appropriate.

96.     Award Fulton attorneys' fees and costs; and

97.     Grant such other relief as the Court may deem just and proper.

Dated: April 29, 2026

_s/Robert J. Brener_
Robert J. Brener (RB 3764)
Arjun D. Shah (906392012)
DUANE MORRIS LLP
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
973 424 2000
E-mail:rjbrener@duanemorris.com
E-mail: adshah@duanemoris.com

*Attorneys for Plaintiff Fulton Bank, N.A.*

24

## VERIFICATION

I, Joseph E. Warner, III declare as follows:

1.      I am Senior Vice President/Commercial Workout Manager, Special Assets Department, Commercial Division of Fulton Bank, N.A. ("Fulton").

2.      I have personal knowledge of the business of Fulton as it relates to Defendants, including the allegations set forth in the foregoing Verified Complaint; and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify pursuant to 28 U.S.C. § 1746, under penalty of perjury and under the laws of the United States of America that the factual statements in this Verified Complaint concerning Fulton, its activities, and its intentions are true and correct, as are the factual statements concerning Defendants, their activities, and their intentions.

Dated: April __, 2026

_____
Joseph E. Warner, III

DM3\22528763.1

25