EVAN MASON HARRIS, ESQ. / ID#018831984
AIELLO HARRIS ABATE
LAW GROUP, P.C.
501 WATCHUNG AVENUE
WATCHUNG, NEW JERSEY 07069
(908) 561-5577
ATTORNEYS FOR ALEX COLLANTES, AVENUE MOTORS, LLP, RAHWAY AUTO
RESOURCES, AND TRINITY MCC REALTY, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FULTON BANK, N.A.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>RAHWAY AUTO RESOURCES INC. ALEXIS P. COLLANTES, JOSE E. COLLADO, LEE V. MORANT, JR., AVENUE MOTORS LLP, and TRINITY MCC REALTY, LLC,<br><br>．<br><br>　　　　　　Defendants. | <u>CIVIL ACTION</u><br><br>2:26 04747 MEF JAS<br><br>ANSWER, SEPARATE DEFENSES, CROSS CLAIMS AND COUNTER CLAIM, JURY DEMAND |

Alexis Collantes (Collantes), Rahway Auto Resources, Inc., (Rahway), Avenue Motors, LLP (Avenue), and Trinity MCC Realty, LLC (Trinity MCC) referred to at times collectively as "Defendants" herein by and through its counsel Aiello Harris Abate Law Group, LLC by way of Answer to the Verified Complaint states as follows:

<u>STATEMENT OF CASE</u>

1.　　　Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations

are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

2. Denied.

## PARTIES

3. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

4. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

5. Admitted.

6. Admitted as to address of Alex P. Collantes. As to the remainder of the allegations, defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as

alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

7.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

8.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

9.    Admitted as to the principal place of business, Avenue Motors, LLP. As to the remainder of the allegations, defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are

legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

10.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## **JURISDICTION**

11.    This paragraph is not a factual allegation asserted against these defendants but rather a statement and conclusion of law and procedure. The law and Federal Procedure speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

12.    This paragraph is not a factual allegation asserted against these defendants but rather a statement and conclusion of law and procedure. The law and Federal Procedure speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff

to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## STATEMENT OF FACTS

### I.    The Loan Agreements

13.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

14.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for

themselves with enforceability and validity to be determined by the court. As such these allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

15. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

16. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

17. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for

themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## II.    Fulton's claim of first priority position.

18.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

19.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

20.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

21.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## III.     Fulton's claim the note is payable on demand.

22.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

23.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

24.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between

the parties speak for themselves. To the extent this paragraph may be construed as alleging Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## IV.     Alleged failure to pay on demand and default on Floor Plan.

25.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

26.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## V.     Fulton's claim to payment and immediate possession of vehicles.

27.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

28.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

29.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

30.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach

or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## VI. The other defendants executed guarantees.

31.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

32.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

33.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and

enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

34.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

35.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## VII.    Alleged failure to pay by Rahway on floorplan.

36.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

37.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

38.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

39.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

40.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach

or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

41.    This paragraph contains opinions and assumptions of plaintiff. The assertions are denied. Further, to the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

42.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## VIII.    <u>Alleged Rahway continued failure to pay and alleged recent violations of Loan Agreement.</u>

43.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and

enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

44.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

45.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

46.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

47.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

48.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

49.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

50.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach

or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

51.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

52.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## IX. Rahway's vehicle inventory.

53.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and

enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

54.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

55.     This allegation does not allege factual assertions. These defendants have insufficient knowledge to plaintiff's beliefs to be able to form a belief as to the true or accuracy as to same. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

56.     This allegation does not allege factual assertions. These defendants have insufficient knowledge of plaintiff's beliefs to be able to form a belief as to the true or accuracy as to same. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

57.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

58.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

59.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

60.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach

or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

61.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

62.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

63.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and

enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

64.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

65.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

66.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

67.    Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitling plaintiff to the relief and damages it seeks the allegations are denied. Further, the contractual documents referenced by plaintiff are legal documents and their validity and enforceability are in question and challenged. The terms of the documents speak for themselves with enforceability and validity to be determined by the court. As such these allegations are denied.

## FIRST CAUSE OF ACTION

(Breach of Contract Against Rahway)

68.    These defendants hereby incorporate all the responses of the above paragraphs 1 through 67 as if fully set forth herein.

69.    Denied.

70.    Denied.

71.    Denied.

## SECOND CAUSE OF ACTION

(Breach of Contract Against Guarantors)

72.    These defendants hereby incorporate all the responses of the above paragraphs 1 through 71 as if fully set forth herein.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

## THIRD CAUSE OF ACTION

(Replevin)

77. These defendants hereby incorporate all the responses of the above paragraphs 1 through 76 as if fully set forth herein.

78. Denied.

79. This paragraph is a demand for possession not a factual allegation. Denied as to the plaintiff's right to replevin.

80. Denied that Fulton is entitled to any right to repossess vehicles.

81. Denied.

82. Denied as to all subparts.

## FOURTH CAUSE OF ACTION

(Recovery of Security and Injunctive Relief)

83. These defendants hereby incorporate all the responses of the above paragraphs 1 through 82 as if fully set forth herein.

84. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

85. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

86. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

87. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the "beliefs" or allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

88. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

89. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

90. Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach

or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

91.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

92.     Defendants have insufficient knowledge to be able to form a belief as to the true or accuracy of the allegations and assertions in this paragraph and any contractual documents between the parties speak for themselves. To the extent this paragraph may be construed as alleging breach or entitlement to recovery of property real or otherwise or entitling plaintiff to the relief and damages it seeks the allegations are denied.

93.     Denied as to all subparts.

## **PRAYER FOR RELIEF**

**WHEREFORE,** defendants request that the plaintiff's complaint in all respects be dismissed and all relief sought be denied together with an award of counsel fees and costs to the defendants.

## **SEPARATE DEFENSES**

1.     Plaintiff's claims fail to state a claim upon which relief can be granted.

2.     The claims are barred by the appropriate statute of limitations.

3.     The claims are barred by license.

4.     The claims are barred by illegality.

5.     The claims are barred due to injury by fellow employees.

6.     The claims are barred by the doctrine of accord and satisfaction.

7.     The claims are barred by arbitration and award.

8.     The claims are barred by assumption of the risk.

9.     The claims are barred and/or reduced by contributory negligence pursuant to N.J.S.A. N.J.S.A. 2A:53A-1. and the doctrine of comparative negligence N.J.S.A. 2A:15-5.1, et seq.

10.     The claims are barred by duress.

11.     The claims are barred by laches.

12.     The claims are barred by failure of consideration.

13.     The claims are barred by agreement of the parties.

14.     The claims are barred by estoppel.

15.     The claims are barred by fraud.

16.     The claims are barred by unclean hands and wrongdoing.

17.     The claims are barred by payment and/or release.

18.     The claims are barred by res judicata.

19.     The plaintiff's claims are barred by the entire controversy doctrine including, but not limited to, the dismissal with prejudice in the matter of Fulton Bank NA vs. Trinity et. als. 2:24 cv 09585 BRM-LDW (the "Prior Federal Action").

20.     The claims are barred by statutes of fraud.

21.     The claims are barred by the doctrine of waiver.

22.     The claims are barred by illegality.

23.     The claims are barred by the doctrine of laches.

24.     The claims are barred by virtue of license.

25.    The claims are barred by consent and or trade practice and custom.

26.    Any claims/damages must be set off by damage suffered by Defendants due to the conduct of Plaintiff and/or Non-Rahway Co-Defendants, Jose E. Collado, Lee V. Morant, Jr. ("Non-Rahway Co-Defendants").

27.    Plaintiff has failed to mitigate their damages or otherwise failed to reasonably prevent their alleged losses.

28.    Plaintiff has breached its obligations, and its conduct has caused the loss complained of, and created impossibility of performance.

29.    This party incorporates all separate defenses provided and set forth in R.4:5-4 and FRCP 8(c)1 including  but not limited to accord and satisfaction, arbitration and award, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver.

30.    Plaintiff's conduct and breach with regard to floor plan documents and guarantees in question in the matter of Fulton Bank NA vs. Trinity et. als. 2:24 cv 09585 BRM-LDW and Fulton Bank NA vs. Rahway Auto Resources Inc., et. als. Docket No.: ESX L 000122 26 resulted in the impossibility of performance of the defendants herein and/or frustrated the ability of defendants and/or rendering performance impossible on the agreements now in question that resulted in the impossibility of performance and otherwise constituted a breach of good faith and fair dealing.

31.    Defendants assert that Plaintiff's claims, in whole or in part, are unsupported by fact or law and may constitute frivolous litigation within the meaning of N.J.S.A. 2A:15-59.1 and Rule 1:4-8 and/or Federal Rule 11. Defendants reserve all rights to seek sanctions, attorney's fees, costs, and other relief as permitted by law.  The facts set forth in the

Declaration of Alex Collantes filed in connection with plaintiff's Order to Show Cause and the facts as set forth asserting these defendants counter claims form the basis of notice and demand for a withdrawal of the plaintiff's pleadings.

## CROSS CLAIMS FOR CONTRIBUTION, INDEMNITY AND COMMON LAW AND CONTRACTUAL INDEMNITY

1.     If plaintiff sustained any of the injuries or damages alleged, the same were proximately caused by the breach, wrongdoing, carelessness, negligence of the co-defendants named and/or fictitious defendants.

2.     Based on the foregoing, defendants Alexis Collantes, Rahway Auto Resources Inc., Trinity MCC Realty LLC, and Avenue Motors LLP demand contribution and recovery from all Non-Rahway Co-Defendants by reason of the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1, et seq. and the provisions of the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq. and any and all other established and applicable legal doctrines and statutes for all damages which plaintiff may recover against these Non-Rahway Co-Defendants and for common law indemnification and contractual indemnification against Non-Rahway Co-Defendants based on but not limited to guarantees and other contractual documents signed by and which co-defendants are bound pursuant to and in accordance with established legal principles.

**WHEREFORE,** defendants, Alexis Collantes, Rahway Auto Resources Inc., Trinity MCC Realty LLC, and Avenue Motors LLP hereby demand judgment against all co-defendants for damages together with interest and costs of suit.

## REQUEST FOR ALLOCATION PURSUANT TO RULE 4:7-(C)

If any defendant(s) settle(s) prior to verdict, defendant will seek an allocation by the fact finder of the percentage of negligence/fault against the settling defendant(s). This/These defendant(s) will seek this allocation, whether or not this/these defendant(s) have formally filed a

cross claim against the settling defendant(s). This/these defendant(s) will rely on direct and cross examination of all witnesses and experts at time of trial and specifically reserve the right to call any and all such witnesses. All parties are being apprised of this pursuant to *Young v. Latta*, 123 N.J. 584 (1991).

## COUNTER CLAIMS

1. Defendants Alexis Collantes, Rahway Auto Resources, Inc., Trinity MCC Realty LLC, and Avenue Motors, LLP by way of counter claim against plaintiff state:

## FACTUAL BASIS

2. As set forth in the Verified Complaint, Fulton provides floorplan inventory financing to Rahway for the purchase and sale of new and used vehicles. As noted by Mr. Warner in his declaration in support of Fulton's Order to Show Cause in general, such lending is made possible through loan agreements providing for an open-ended credit arrangement secured by the floor-planned vehicles themselves and often, as is the case here, by non-floor planned vehicles and other business assets of the dealership borrower.

3. Rahway has received floorplan financing from Fulton pursuant to the loan documents on several floor plans. The loan documents speak for themselves.

4. Very simply, Rahway has repeatedly worked with Fulton over the years successfully and Fulton continued to extend credit and even increased the floor plan credit to Rahway. Defendants have fallen from time to time behind on the loans but made good on any deficits to Fulton in the past. Moreover, defendants had prior floor plan loans with Fulton dated January 2020 for both new and used cars. That floor plan was satisfied in full but Fulton never terminated the guarantees in connection with such floor plans and the language of the guarantees previously signed broadly defined the term indebtedness such as to appear to also apply to the new

floor plan loans also. Defendants also satisfied Fulton on its floor plan for Avenue Motors. In addition defendants had floor plans with Nextgear and Westlake that were satisfied.

5.      Fulton's wrongful actions beginning 2024 created a hole that Rahway and defendants now find themselves challenged to get out of and which will result in the loss of all of Rahway's/defendants' assets and collateral and expose guarantors to increased liability.

6.      Fulton was complicit in creating the problems both it and defendants now face. They come to this court with unclean hands.

7.      Quoting the declaration of Joseph Warner, Rahway owed "$469,253.45 in floorplan advances in November 2024". Then by February 2026 $5,140,660.00 in floorplan advances were outstanding. Then $8,826,833.67 in floorplan advances in March 2026. Then $10,428,495.18 in floorplan advances by April 2, 2026, and $10,860,780.02 in floorplan advances by April 15, 2026.

8.      Defendants help create and/or created the debt they now seek to collect due to unfair conduct that constituted a breach of its own loan documents.

9.      Defendant Collantes was partners with Lee Morant and Jose Collado in both Trinity Cadillac and Rahway which is a Mitsubishi dealership. Fulton had provided a floor plan/credit line to both Trinity Cadillac and Rahway Mitsubishi as these dealerships were linked with common ownership. Mr. Morant and Collantes, however, dissolved their partnership and Mr. Morant kept Trinity (Cadillac) and Collantes kept Rahway (Mitsubishi). Both Mr. Morant and Collantes signed personal guarantees on both floor plans for Trinity and Rahway to Fulton.

10.     When Trinity found itself in financial trouble with Fulton, Collantes emailed Mr. Warner/Fulton in October 2024 and requested to be released from Trinity's obligations. See **Exhibit A**.

11.     Collantes had the right to sever his obligations and the obligations of Rahway for the Trinity Cadillac debt and revoke any guaranteed obligation Collantes had for Trinity. Joe

Warner/Fulton was aware of the split Collantes had with Mr. Morant and Collado and that Collantes was no longer involved in Trinity Cadillac as Collantes now solely owned and operated the Rahway Mitsubishi store and Avenue Motors.

12.    Annexed hereto as **Exhibit B** is the commercial loan guarantee for Rahway that was signed by defendant Collantes in 2020 which was broad, never terminated and far reaching and applied to all indebtedness whether acquired at the time or thereafter including the subsequent obligations as to Trinity Cadillac. The 2020 Guarantees noted defendants had the right to revoke their guarantees by requesting same in writing. Collante's email annexed as Exhibit A was Collantes written request to be released from the Trinity Guarantee. This was denied by Fulton. The guarantees, although different in terms annexed as Exhibits to Fulton's Verified Complaint in the Prior Federal Action did not alter, amend or terminate the previous guarantee provisions that covered all indebtedness. These broad, overlapping legal interests are partially why Fulton sued Collantes and Rahway in Prior Federal Action.

13.    The provisions of the 2020 Guarantee signed by Collantes provided:

GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other

14.    Fulton breached its obligation to sever and revoke Collantes and Rahway's obligations on the Trinity Cadillac loans. Further, Fulton then *sued Rahway and Collantes in a Prior Federal Action.*

15. Notably, the allegations in the Prior Federal Action relate to *both* Trinity's debts and Rahway's debts (as well as related guaranties) at issue in this action.

16. Case in point, Ex. G to the Complaint in the Prior Federal Action is a July 3, 2024, Notice of Default to Rahway and its guarantors including Collantes – the very same notice referred to in ¶37 of the Verified Complaint in this action:

> 37.    Rahway failed to pay off the Floorplan by June 26, 2024. Thereafter on July 3, 2024, Fulton sent Rahway a Notice of Default notifying Rahway that its failure to pay the Floorplan constituted a default under the Loan Agreements. Notwithstanding the default, Fulton

17.    Fulton's intentional failure to revoke guaranties and scattershot litigation strategy *were catastrophic for Rahway* as all defendants other floor plan lender, Nextgear which was critical for Rahway cancelled their floor plan line of 2.5 million dollars.

16.    Collantes was also in negotiations with other floor plan lenders at the time for additional floor plans lines with Key Bank, BMO, Allied and Santander. All these potential lenders walked out the door when Rahway and Collantes were sued by Fulton in the Prior Federal Action.

18.    The foregoing created a snowball effect that now left defendants struggling to pay bills, keep the doors open and pay Fulton on its floor plan for Rahway.  Without floor plan money defendants can't buy cars. Without cars defendants have nothing to sell. When the number of cars defendants can buy diminishes defendants can't make ends meet.

19.    On June 11, 2025, Fulton dismissed the Prior Federal Action lawsuit in Federal Court *with prejudice*. See **Exhibit C.**  However, by that time the damage was done and growing. Rahway Mitsubishi was at was in the red on the Fulton floor plan.

20.     The subject floor plan default at that time was expressly mentioned, linked to and connected to Trinity's Cadillacs floor plan obligation and floor plan debt and all rose out of the same transactions with common ownership.

21.     Instead of suing Rahway on the Mitsubishi floor plan 2024 that they later dismissed with prejudice Fulton continued to provide credit to Rahway but then continue to assert defaults. Rahway's problems continued to grow considering the loss of other floor plans due to the association with the Trinity Cadillac lawsuit which Fulton failed to remedy.

22.     Fulton further created more problems and doubled down on the damage caused to defendants as despite dismissing the 2024 Federal lawsuit *with prejudice* in Federal Court in June 2025, *Fulton then decided to wrongfully reinstitute suit against Collantes, Rahway and Avenue Motors, LLC now in Essex County Superior Court on the "guarantees" signed on the Trinity Cadillac debt they walked away from with prejudice in Federal Court.* This State Court matter was pending until just recently dismissed.  This suit is the third improper bite at the apple to sue Defendants relative to these alleged defaults despite dismissal with prejudice.

23.     Trinity Cadillac, however, before the dismissal of the state court action against defendants filed for bankruptcy and was sold in bankruptcy. The closing recently took place and defendants assert Fulton was fully satisfied out of the bankruptcy sale on the Trinity Cadillac debt/floor plan.  See annexed Superior Court Complaint. **Exhibit D.**  See dismissal of Essex County Action. **Exhibit E.**

24.     In Exhibit G of Fulton Bank's moving papers, they notified defendants that they were in default by letter of November 7, 2024 regarding failure to pay for vehicles sold as required by the loan documents. In addition to the floor plan money demanded as due a maturity date of the loan documents was noted as May 1, 2024, and defendants were reminded of the fact that

defendants did not pay the loan off by the two previous dates of June 26, 2024, and August 15, 2024 that were extended to defendants.

25.    In the letter of November 7, 2024, a list of all vehicles for which Fulton asserted they did not receive payment was enclosed and which were sold totaling $469,253.45. The bank demanded payment at that time now by November 12, 2024.

26.    The alleged debt now on new cars is $5,337.973.12. The total debt for used vehicles is alleged to be $7,823.302.45.

27.    This debt accumulated in full and continuing view of Fulton and with knowledge that their failure to revoke Rahway's/defendants obligations on the Trinity Cadillac debt and suing Rahway and defendants on that debt not once but twice was catastrophic for Rahway with regard to maintaining its access to floor financing.  Fulton created the problem, allowed it to grow and now cries fowl.

28.    Furthermore, Fulton audited defendant's records monthly from the outset and then on a biweekly basis beginning in 2025. They were well aware that Rahway/defendants were behind on the floor plan debts both new and used as of 2024, caused it and watched it happen then had then had temerity to refile a lawsuit in State Court they had dismissed with prejudice in Federal Court against Rahway/defendants damaging defendants.

29.    In fact. Fulton Bank's letter of January 30, 2024, annexed as Exhibit F to Fulton's moving papers clearly document the fact that Fulton was terminating its line of credit with defendants, and they advised they would not be renewing the line of credit on the maturity date. They demanded payment by June 26, 2024, to pay off the entire credit line.

30.    In Exhibit G of Fulton Banks Moving Papers, they notified us that we were in default by letter of November 7, 2024, regarding failure to pay for vehicles sold as required by the loan documents. In addition to the floor plan money demanded as due a maturity date of the loan

documents was noted as May 1, 2024, and defendants were reminded of the fact that we did not pay the loan off by the two previous dates of June 26, 2024, and August 15, 2024 that were extended to defendants.

31.    In the letter of November 7, 2024, a list of all vehicles for which Fulton asserted they did not receive payment was enclosed and which were sold totaling $469,253.45. The bank demanded payment at that time now by November 12, 2024.

32.    By the time defendants received the next demand from Fulton through their attorneys of October 24, 2025, annexed as Exhibit H to their papers the debt had grown substantially in full view of Fulton the entire time.

33.    Furthermore as of January 2026 Fulton froze defendants new and used car floor plans and this just added to the problem of defendants as they now could not buy new and used cars as they used to and were then forced to use the money defendants received on cars on the ground that were sold just to pay expenses to keep the doors open. Collantes had conversations with Joe Warner about this growing problem.

34.    By February 25, 2026, the alleged debt was $5,140,666.00. Exhibit I to Fulton's papers.

35.    Exhibit J annexed to Fulton's papers highlights the monies Fulton knew at each step was due and not paid due to defendants' financial issues that snowballed from plaintiffs' breach.

36.    Defendants claim the obligation for monies due gradually ballooned due (a) Fulton's wrongful failure to revoke Rahway's obligation tied to Trinity Cadillac (b) Fulton choosing to sue Rahway/defendants and entangle Rahway/defendants in the Trinity Cadillac obligation thus tarring our standing with our other floor plan lenders and resulting in the loss of our other lines of credit (c) continuing despite full knowledge of the growing debt to exacerbate the problem by allowing the debt to grow out of all proportion knowing Rahway was struggling.

37.     As further evidence of the bad faith of Fulton as noted defendants were in negotiations with Galin, which is a hedge fund to infuse significant dollars into Rahway. Galin was all set to provide funds to help with funding provided Rahway Mitsubishi got a new floor plan in place. Fulton had been part of these discussions. Galin had indicated a readiness to fund Rahway with significant dollars to keep the dealership going. This will importantly open the door to a new floor plan lender, Palisades of up to $2.5 million dollars which will allow us to floor at least 150 cars a month from which we can sell and project to be able to sell at last 80 to 110 units per month. We worked out a floor replacement plan financing with Palisades which would have taken Fulton out on the cars still on the ground and provided me the funds to acquire inventory and thus began paying Fulton back. This floor plan financing *was, however, contingent on Fulton dismissing the current lawsuit without prejudice.* Fulton refused to dismiss without prejudice and insisted I sign their Forbearance Agreement first. Fulton then refused to agree to modest changes on the Forbearance Agreement we requested. As result the deal seems to have fallen apart due to the unreasonable position of Fulton.

38.     Fulton's conduct was wrongful, constituted breach and was otherwise unconscionable as set forth above. Fulton helped create a problem and an impossibility of performance due to breach and bad faith they now blame solely on defendants.

## COUNT I
## BREACH OF CONTRCT

39.     These defendants/counterclaims repeat and reallege all their averments and responses set forth above as though set forth herein at length.

40.     Plaintiff Fulton Bank breached its agreement and obligation to terminate the guarantee owed by the defendants on the Trinity Cadillac obligations, included the defendants herein as defendants in Fulton Bank vs. Trinity Auto, LLC et. als. filed in the Federal District Court

of New Jersey Case 2:24 cv 09585 BRM LDW resulting in financial damage to the defendants/counterclaimants resulting in defendant's counterclaimants becoming unable to meet it monthly expenses and loan obligations, damaging defendants/counterclaimant's ability to obtain and retain floor plan financing.

41.    Fulton Bank thereafter dismissed with prejudice the lawsuit filed in the Federal District Court of New Jersey Case 2:24 cv 09585 BRM LDW but refiled the lawsuit against defendants in State Superior Court in Essex County, Docket No.: ESX L 000122 26. This caused further damage as set forth above to the defendants/counterclaimants and was wrongfully filed as the original case had been dismissed with prejudice.

42.    Fulton's conduct aforesaid constituted a breach of its contractual obligations, further was intentional, reckless and/or done with knowing disregard of its wrongfulness and the damage it would cause defendants/counterclaimants including the loss of the franchise, loss of the value of its business and/or future profits and other loss/damage caused by Fulton's breach and wrongful conduct.

**WHEREFORE**, defendant counterclaimants demand compensatory and punitive damages against Fulton Bank together with costs of suit, interest and reasonable counsel fees.

## **COUNT II**
### **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

43.    These defendants/counterclaims repeat and reallege all their averments and responses set forth above as though set forth herein at length.

44.    The conduct of Fulton Bank aforesaid constituted a breach of its duty of good faith and fair dealing.

**WHEREFORE**, defendant counterclaimants demand compensatory and punitive damages against Fulton Bank together with costs of suit, interest and reasonable counsel fees.

## COUNT III
## NEGLIGENCE

45.     These defendants/counterclaims repeat and reallege all their averments and responses set forth above as though set forth herein at length.

46.     The conduct of Fulton Bank aforesaid constituted negligence.

47.     As a proximate result of such negligence on the part of Fulton Bank defendants/counterclaimants were damaged financially and will continue to incur loss and damage.

**WHEREFORE**, defendant counterclaimants demand compensatory and punitive damages against Fulton Bank together with costs of suit, interest and reasonable counsel fees.

## COUNT IV
## INTENTIONAL FAILURE TO HONOR OBLIGATIONS AND INTERFERENCE WITH ECONOMIC ADVANTAGE AND BUSINESS OPPORTUNITIES

48.     These defendants/counterclaims repeat and reallege all their averments and responses set forth above as though set forth herein at length.

49.     Fulton Bank failed to honor its obligations in the guarantee signed by defendants/Collantes and further acted in such a way as to damage defendants business operations, credit, reputation resulting in an inability to obtain floor plan financing thus destroying defendants Mitsubishi dealership and franchise.

50.     As a proximate result of Fulton's wrongful omissions and/or conduct caused defendants/counterclaimants the loss of the Mitsubishi franchise, loss of the value of their business and/or future profits and other loss/damage caused by Fulton's breach and wrongful conduct.

**WHEREFORE**, defendant counterclaimants demand compensatory and punitive damages against Fulton Bank together with costs of suit, interest and reasonable counsel fees.

## <u>JURY DEMAND</u>

Defendants/counterclaimants hereby demand trial by jury.

Dated: June 11, 2026

*Evan Mason Harris*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Evan Mason Harris, Esq.

**AIELLO HARRIS ABATE
LAW GROUP, P.C.
501 WATCHUNG AVENUE
WATCHUNG, NEW JERSEY 07069
(908) 561-5577
ATTORNEYS FOR ALEX COLLANTES,
AVENUE MOTORS, LLP AND RAHWAY AUTO
RESOURCES**

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 40 of 92 PageID: 426

# EXHIBIT "A"

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 41 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 279    Filed 05/08/26    Page 11 of 60 PageID:
315

1/12/26, 4:16 PM                                        Bell Mitsubishi Mail - re: Trinity Cadillac Agreement

# M Gmail

Sofia Urquia <surquia@bellmitsubishi.com>

## re: Trinity Cadillac Agreement

6 messages

**Sofia Urquia** <surquia@bellmitsubishi.com>                                  Tue, Oct 29, 2024 at 1:00 PM
To: "Warner, Joseph" <JWarner@fultonbank.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>
Bcc: anthony@galinn.com

Good Morning Mr. Warner,

I hope you are doing well.
We are writing to you to go over a few key factors and to request and also give full transparency in regards to Trinity
Cadillac and Rahway Auto Resource's current situation.

We are aware of certain forbearance agreements being considered in regards to Trinity Cadillac's out of trust balance. As
we do not know the specifics we would like to request that any negotiations include a full release for Alex Collantes on any
debt owed by Trinity Cadillac.
We are days away from our letter of intent but they are requesting confirmation of Alex's release from Trinity Cadillac's
obligations.

Rahway Auto Resource is approximately three weeks away from fully paying Fulton Bank our Floorplan obligation,
however it is imperative that we get the Trinity Cadillac release to be able to move forward.
Key Bank's next board meeting is Thursday, any updates need to be sent in prior to that meeting or it gets pushed back to
the following week.

We are also aware that our previous audit has not been fully paid down, we were hoping to have it completed by Monday
but we have some delayed fundings, primarily from Santander.
We are hoping to be back on track in the next few days.

We truly appreciate your consideration and attention to this matter.

Best Regards,

Sofia Urquia
CFO
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
908-235-8599 mobile

732-388-8800 ext 410 office



**Warner, Joseph** <JWarner@fultonbank.com>                                   Tue, Oct 29, 2024 at 4:58 PM
To: Sofia Urquia <surquia@bellmitsubishi.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 42 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 29    Filed 05/08/26    Page 12 of 60 PageID:
428
316

Good afternoon.  Fulton and Trinity are discussing a possible forbearance agreement which will substantially reduce the overall exposure; however, as there will be a remaining balance due Fulton is unable to release any guarantors at this time.  I realize the sensitivity involved with the possible refinance as it relates to the guarantees of both Rahway and Alex, and I am confident that we can make arrangements to resolve same.  There is no reason why Key Bank cannot issue a commitment containing a provision that those agreements are satisfied as a condition of closing.  Thanks, and have a pleasant evening.


Respectfully,


**Joseph E. Warner, III**

Vice President/Regional Manager

Special Assets Department, Commercial Division

Fulton Bank, N.A.

533 Fellowship Road, Suite #250

Mount Laurel, NJ 08054

(856) 787-6249 (VOIP #19049)

(856) 787-6321 – Facsimile

jwarner@fultonbank.com



**From:** Sofia Urquia <surquia@bellmitsubishi.com>
**Sent:** Tuesday, October 29, 2024 1:00 PM
**To:** Warner, Joseph <JWarner@fultonbank.com>
**Cc:** Alex Collantes <alex@bellmitsubishi.com>
**Subject:** re: Trinity Cadillac Agreement


# CAUTION: External Message
## Evaluate before opening links & attachments


[Quoted text hidden]

***CONFIDENTIALITY NOTICE***This email contains confidential information which may also be legally privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents, may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and delete this message

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 43 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 29   Filed 05/08/26   Page 13 of 60 PageID:
429
317
1/12/26, 4:16 PM                                    Bell Mitsubishi Mail - re: Trinity Cadillac Agreement

from your inbox. Thank you. E-Mail Opt Out Notice: This e-mail message may include an advertisement. You have the right to request that we not send future advertisements to you at this e-mail address. If you prefer not to receive future advertisements from us at this e-mail address, please access the following url http://www.optoutffc.com/ Fulton Bank, N.A., P.O. Box 8, East Petersburg, Pa. 17520

---

**Sofia Urquia** <surquia@bellmitsubishi.com>                          Tue, Oct 29, 2024 at 5:02 PM
To: "Collins, James E" <james_e_collins@keybank.com>

I reached out to Fulton about the release of Alex from Trinity's obligation and this is their response. See below.

Best Regards,

Sofia Urquia
Controller
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
732-388-8800  Ext: 410



--------- Forwarded message ---------
From: **Warner, Joseph** <JWarner@fultonbank.com>
Date: Tue, Oct 29, 2024 at 4:58 PM
Subject: RE: Trinity Cadillac Agreement
To: Sofia Urquia <surquia@bellmitsubishi.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>

Good afternoon.  Fulton and Trinity are discussing a possible forbearance agreement which will substantially reduce the overall exposure; however, as there will be a remaining balance due Fulton is unable to release any guarantors at this time.  I realize the sensitivity involved with the possible refinance as it relates to the guarantees of both Rahway and Alex, and I am confident that we can make arrangements to resolve same.  There is no reason why Key Bank cannot issue a commitment containing a provision that those agreements are satisfied as a condition of closing.  Thanks, and have a pleasant evening.

Respectfully,

**Joseph E. Warner, III**

Vice President/Regional Manager

Special Assets Department, Commercial Division

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 44 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 30-9    Filed 05/08/26    Page 14 of 60 PageID:
430
318

Fulton Bank, N.A.

533 Fellowship Road, Suite #250

Mount Laurel, NJ 08054

(856) 787-6249 (VOIP #19049)

(856) 787-6321 – Facsimile

jwarner@fultonbank.com

**From:** Sofia Urquia <surquia@bellmitsubishi.com>
**Sent:** Tuesday, October 29, 2024 1:00 PM
**To:** Warner, Joseph <JWarner@fultonbank.com>
**Cc:** Alex Collantes <alex@bellmitsubishi.com>
**Subject:** re: Trinity Cadillac Agreement

# CAUTION: External Message
## Evaluate before opening links & attachments

Best Regards,

Sofia Urquia
CFO
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
908-235-8599 mobile

732-388-8800 ext 410 office



[Quoted text hidden]

**Sofia Urquia** <surquia@bellmitsubishi.com>                     Tue, Oct 29, 2024 at 5:03 PM
To: "Warner, Joseph" <JWarner@fultonbank.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 45 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 19    Filed 05/08/26    Page 15 of 60 PageID:
319
431

Thank you Mr. Warner!
You have a pleasant evening as well.

Best Regards,

Sofia Urquia
Controller
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
732-388-8800  Ext: 410



[Quoted text hidden]

---

**Sofia Urquia** <surquia@bellmitsubishi.com>                                        Wed, Oct 30, 2024 at 10:52 AM
To: "Dobbs, Seth L." <sdobbs@foxrothschild.com>

Best Regards,

Sofia Urquia
Controller
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
732-388-8800  Ext: 410



---------- Forwarded message ---------
From: **Warner, Joseph** <JWarner@fultonbank.com>
Date: Tue, Oct 29, 2024 at 4:58 PM
Subject: RE: Trinity Cadillac Agreement
To: Sofia Urquia <surquia@bellmitsubishi.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>

[Quoted text hidden]

---

**Sofia Urquia** <surquia@bellmitsubishi.com>                                        Mon, Jan 12, 2026 at 10:42 AM
To: Alex Collantes <alex@bellmitsubishi.com>

See below, in reference to forbearance agreement.

Best Regards,

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 46 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 29    Filed 05/08/26    Page 16 of 60 PageID:
432
320
1/12/26, 4:16 PM                                         Bell Mitsubishi Mail - re: Trinity Cadillac Agreement

Sofia Urquia
Controller
Bell Mitsubishi
1500 Route 1
Rahway, NJ 07065
732-388-8800  Ext: 410



---------- Forwarded message ---------
From: **Warner, Joseph** <JWarner@fultonbank.com>
Date: Tue, Oct 29, 2024 at 4:58 PM
Subject: RE: Trinity Cadillac Agreement
To: Sofia Urquia <surquia@bellmitsubishi.com>
Cc: Alex Collantes <alex@bellmitsubishi.com>

[Quoted text hidden]

# EXHIBIT "B"

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 48 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 34   Filed 05/08/26   Page 18 of 60 PageID:
322

*100000000000200270063400000000000000053200000000*

# COMMERCIAL GUARANTY

| Borrower: | Rahway Auto Resource Inc.<br>1600 US Highway 1<br>Rahway, NJ 07065-5622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |
|---|---|---|---|
| Guarantor: | Alexis P. Collantes<br>1200 Georgia Street<br>Rahway, NJ 07065 | | |

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Rahway Auto Resource Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Alexis P. Collantes, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Fulton Bank, N.A., its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 49 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 39   Filed 05/08/26   Page 19 of 60 PageID:
323

## COMMERCIAL GUARANTY
**(Continued)**

Loan No: 0200270                                                                 Page 2

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Additional Requirements. Annual Personal Financial Statements.** Annual personal financial statements for Guarantor, using either Lender's form of personal financial statement, or an accountant's form (to include a statement of contingent liabilities), and copies of bank and brokerage statements sufficient to allow Lender to verify liquidity if personal liquidity is $100,000.00 or greater (such copies to be delivered at the time of delivery of the particular personal financial statement), as soon as available, but in no event later than 120 days after the end of each fiscal year; provided, however, that in all events the delivered personal financial statement shall be dated no more than 12 months from the date of the last statement received; and provided further, however, that all personal financial statements must be "single" name statements, that is, statements only for Guarantor.

**Tax Returns.** Annual federal income tax returns for Guarantor prepared by an independent accounting firm (acceptable to Lender), including all schedules (including, for example, Schedules E and F to IRS Form 1040) and all applicable K-1s (including for any entity shown on Schedule E), as soon as available, but in no event later than 30 days after the applicable filing date for the tax reporting period then ended. The applicable filing date shall mean the earliest date on which the tax returns are due, regardless of whether an extension is being sought.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions.**

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 50 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 30   Filed 05/08/26   Page 20 of 60 PageID:
324

## COMMERCIAL GUARANTY
Loan No: 0200270         (Continued)         Page 3

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JANUARY 17, 2020.

**GUARANTOR:**

X_____
    Alexis P. Collantes

Signed, acknowledged and delivered in the presence of:

X_____
    Witness

X_____
    Witness

LaserPro, Ver. 19.2.0.042  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ  H:\LPL\COM\CFI\LPL\E20.FC  TR-41949

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 51 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 37-9    Filed 05/08/26    Page 21 of 60 PageID:
325

*1000000000002002700634000000000000000053200000000*

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | Rahway Auto Resource Inc.<br>1500 US Highway 1<br>Rahway, NJ 07065-5622 | **Lender:** | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |
| **Guarantor:** | Trinity MCC Realty, LLC<br>1500 US Highway 1<br>Rahway, NJ 07065 | | |

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Rahway Auto Resource Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Trinity MCC Realty, LLC, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Fulton Bank, N.A., its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 52 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 38    Filed 05/08/26    Page 22 of 60 PageID:
326

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 0200270                                                                                      Page 2

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions.**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 53 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 39    Filed 05/08/26    Page 23 of 60 PageID:
327

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 0200270                                                                    Page 3

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JANUARY 17, 2020.

GUARANTOR:

TRINITY MCC REALTY, LLC

By:_____
Leo V. Morant, Member of Trinity MCC Realty, LLC

By:_____
Joseph Collado, Member of Trinity MCC Realty, LLC

Signed, acknowledged and delivered in the presence of:

X_____
Witness

X_____
Witness

By:_____
Alex Collantes, Member of Trinity MCC Realty, LLC

LaserPro, Ver. 18.2.0.043  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ  N:\LPL\CD\ALLX\CFN.PL\E20.FC  TR-41968

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 54 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 40   Filed 05/08/26   Page 24 of 60 PageID:
328

*100000000000020027006410000000000000000053200000000*

# LANDLORD'S RELEASE

| Borrower: | Rahway Auto Resource Inc.<br>1500 US Highway 1<br>Rahway, NJ 07065-5622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |

THIS LANDLORD'S RELEASE is entered into among Rahway Auto Resource Inc. ("Borrower"), whose address is 1500 US Highway 1, Rahway, NJ 07065-5622; Fulton Bank, N.A. ("Lender"), whose address is Edison Office, 533 Fellowship Road, Regional Corporate Address, Mount Laurel, NJ 08054; and Trinity MCC Realty, LLC ("Landlord"), whose address is 1500 US Highway 1, Rahway, NJ 07065. Borrower and Lender have entered into, or are about to enter into, an agreement whereby Lender has acquired or will acquire a security interest or other interest in the Collateral. Some or all of the Collateral may be affixed or otherwise become located on the Premises. To induce Lender to extend the Loan to Borrower against such security interest in the Collateral and for other valuable consideration, Landlord hereby agrees with Lender and Borrower as follows.

**COLLATERAL DESCRIPTION.** The word "Collateral" means certain of Borrower's personal property in which Lender has acquired or will acquire a security interest, including without limitation the following specific property:

All Inventory, Chattel Paper, Accounts and General Intangibles. All present and future new and used vehicles and all accessories and appurtenances thereto, as well as all parts, inventory now owned or hereafter acquired and the proceeds thereof.

**DISCLAIMER OF INTEREST.** Landlord hereby consents to Lender's security interest (or other interest) in the Collateral and disclaims all interests, liens and claims which Landlord now has or may hereafter acquire in the Collateral. Landlord agrees that any lien or claim it may now have or may hereafter have in the Collateral will be subject at all times to Lender's security interest (or other present or future interest) in the Collateral and will be subject to the rights granted by Landlord to Lender in this Agreement.

**ENTRY ONTO PREMISES.** Landlord and Borrower grant to Lender the right to enter upon the Premises for the purpose of removing the Collateral from the Premises or conducting sales of the Collateral on the Premises. The rights granted to Lender in this Agreement will continue until a reasonable time after Lender receives notice in writing from Landlord that Borrower no longer is in lawful possession of the Premises. If Lender enters onto the Premises and removes the Collateral, Lender agrees with Landlord not to remove any Collateral in such a way that the Premises are damaged, without either repairing any such damage or reimbursing Landlord for the cost of repair.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement: This Agreement shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Agreement. The covenants of Borrower and Landlord respecting subordination of the claim or claims of Landlord in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any claim or claims to which this Agreement shall apply. Lender need not accept this Agreement in writing or otherwise to make it effective. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey. If Landlord is other than an individual, any agent or other person executing this Agreement on behalf of Landlord represents and warrants to Lender that he or she has full power and authority to execute this Agreement on Landlord's behalf. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender. Without notice to Landlord and without affecting the validity of this Consent, Lender may do or not do anything it deems appropriate or necessary with respect to the Loan, any obligors on the Loan, or any Collateral for the Loan; including without limitation extending, renewing, rearranging, or accelerating any of the Loan indebtedness.

**AMENDMENTS.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Landlord, shall constitute a waiver of any of Lender's rights or of any of Landlord's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

Agreement. The word "Agreement" means this Landlord's Release, as this Landlord's Release may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Release from time to time.

Borrower. The word "Borrower" means Rahway Auto Resource Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Landlord. The word "Landlord" means Trinity MCC Realty, LLC, and is used for convenience purposes only. Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

Lender. The word "Lender" means Fulton Bank, N.A., its successors and assigns.

Loan. The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

Note. The word "Note" means the Note dated January 17, 2020 and executed by Rahway Auto Resource Inc. in the principal amount of $4,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Premises. The word "Premises" means the real property legally described as:

1500 US Highway 1, Rahway, Union County, NJ

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 55 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 41-9    Filed 05/08/26    Page 25 of 60 PageID:
329

**LANDLORD'S RELEASE**
**(Continued)**

Loan No: 0200270                                                                          Page 2

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S RELEASE, AND BORROWER AND LANDLORD AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 17, 2020.

**BORROWER:**

RAHWAY AUTO RESOURCE INC.

By: _____
Jose E. Collado, Director of Rahway Auto Resource Inc.

By: _____
Lee V. Morant, Jr., Director of Rahway Auto Resource Inc.

By: _____
Alexis P. Collantes, Director of Rahway Auto Resource Inc.

**ATTEST:**

_____
Secretary or Assistant Secretary

( Corporate Seal )

**LANDLORD:**

TRINITY MCC REALTY, LLC

By: _____
Lee V. Morant, Member of Trinity MCC Realty, LLC

By: _____
Alex Collantes, Member of Trinity MCC Realty, LLC

By: _____
Joseph Collado, Member of Trinity MCC Realty, LLC

Signed, acknowledged and delivered in the presence of:

X_____
Witness

X_____
Witness

**LENDER:**

FULTON BANK, N.A.

X_____
Authorized Officer

LaserPro, Ver. 19.2.0.042  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ  N:\LPL\CO\ML\CFI\LPL\E43.FC  TR-41968

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 56 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 429    Filed 05/08/26    Page 26 of 60 PageID:
330

*1000000000020027006990000000000000005320000000000*

# COMMERCIAL SECURITY AGREEMENT

| Grantor: | Rahway Auto Resource Inc.<br>1500 US Highway 1<br>Rahway, NJ 07065-5622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |
|---|---|---|---|

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Rahway Auto Resource Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Rahway Auto Resource Inc..

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Fulton Bank, N.A., its successors and assigns.

**Note.** The word "Note" means the Note dated January 17, 2020 and executed by Rahway Auto Resource Inc. in the principal amount of $4,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**THIS COMMERCIAL SECURITY AGREEMENT dated January 17, 2020, is made and executed between Rahway Auto Resource Inc. ("Grantor") and Fulton Bank, N.A. ("Lender").**

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All inventory, Chattel Paper, Accounts and General Intangibles. All present and future new and used vehicles and all accessories and appurtenances thereto, as well as all parts, inventory now owned or hereafter acquired and the proceeds thereof**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 57 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 13    Filed 05/08/26    Page 27 of 60 PageID:
331

## COMMERCIAL SECURITY AGREEMENT
Loan No: 0200270 | (Continued) | Page 2

checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts and general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of New Jersey, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 58 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 44   Filed 05/08/26   Page 28 of 60 PageID:
332

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 0200270**                          (Continued)                          Page 3

Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A) be payable on demand;  (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1) the term of any applicable insurance policy; or  (2) the remaining term of the Note; or  (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Default will occur if payment of the Indebtedness in full is not made immediately upon demand.

**RIGHTS AND REMEDIES ON DEFAULT.** If Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the New Jersey Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

## COMMERCIAL SECURITY AGREEMENT
**(Continued)**

Loan No: 0200270                                                                                                           Page 4

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of New Jersey.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 17, 2020.

GRANTOR:

RAHWAY AUTO RESOURCE INC.

By: _____
Jose E. Collado, Director of Rahway Auto Resource Inc.

By: _____
Alexis P. Collantes, Director of Rahway Auto Resource Inc.

By: _____
Leo V. Morant, Jr., Director of Rahway Auto Resource Inc.

ATTEST:

_____
Secretary or Assistant Secretary

( Corporate Seal )

LaserPro, Ver. 19.2.0.043  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ  N:\LPL\COM\LCFR.PL\E10.FC  TR-41259

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 60 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 40   Filed 05/08/26   Page 30 of 60 PageID:
334

# REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT

| Borrower: | Rahway Auto Resource Inc.<br>1600 US Highway 1<br>Rahway, NJ 07065-6622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |

REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT

Regulation B and the Equal Opportunity Act requires that a lender obtain evidence of each loan applicants intent to apply for joint credit at the time of application.

If this is an application for joint credit, Applicant and Co-Applicant(s) each agree that we intend to apply for joint credit (sign below):

Applicant Signature                     Date      1/17/2020  - Jose Conado

Co-Applicant Signature                  Date      1/17/2020

Co-Applicant Signature                  Date      1-17-2020

Co-Applicant Signature                  Date      1/17/2020

LaserPro, Ver. 18.2.0.042 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - NJ H:\EPL\COM\LICFTN\PL\G32.FC TR-41959

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 61 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 4479    Filed 05/08/26    Page 31 of 60 PageID:
335



*1000000000002002700637000000000000000053200000000*

## NEW INTERNAL TRANSFER AUTHORIZATION

| | |
|---|---|
| **Borrower:** Rahway Auto Resource Inc.<br>1600 US Highway 1<br>Rahway, NJ 07066-5622 | **Lender:** Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |

**From (Debit)**

Checking/Savings Account Number _____

**To (Credit)**

Commercial Account Number _____

**Initial Transfer Date** _____ **(must be payment due date)**

**Amount of Draft**

$ _____

Transfer Intervals*

__ Weekly _____ (Monday thru Friday)    __ Bi-Weekly _____ (Monday thru Friday)

__ Monthly _____ (1st thru 31st)    __ Other _____

**NOTE: The above terms must match the Promissory Note language**

*Transfers scheduled to occur on the 29th, 30th, or 31st day of the month will be scheduled for the last calendar day of the month which does not contain the scheduled day. If the day of your scheduled transfer falls on a Saturday, Sunday or holiday we are not open for business, your transfer will occur on the next business day we are open for business following the scheduled transfer day.

*Please note any commercial loan that hits maturity WILL NOT draft payoff amount.

By signing this authorization, I/we:

*   may discontinue the above transfer at any time.

*   authorize the above transfer and agree that transfer as shown on the regular statement will be sufficient notice of transfer.

Signature _____ Date 1/17/2020

Signature _____ Date 1/17/2020

Signature _____ Date 1-17-2020

Authorized By _____ (Lender)

LaserPro Ver 19.2.0.042 Copr. Finastra USA Corporation 1997, 2020  All Rights Reserved  - NJ  N:\LPL\CONL\CFILPL\G00.FC  TR-61959

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 62 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 18   Filed 05/08/26   Page 32 of 60 PageID:
336

*1000000000002002700576000000000000000053200000000*

## BOARDING DATA SHEET

| Borrower: | Rahway Auto Resource Inc.<br>1600 US Highway 1<br>Rahway, NJ 07065-6622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>633 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |
|---|---|---|---|

### CUSTOMER DATA SUMMARY

| | | | | | |
|---|---|---|---|---|---|
| Rahway Auto Resource Inc.<br>Street Address:1600 US Highway 1<br>Mailing Address:<br>Primary Phone: (732) 388-8800 | 22-3670926<br>Rahway<br><br>Ext: | Corporation<br>NJ 07065-5622<br><br>Instructions: | Borrower<br>County:<br>County: | Cust #:<br>Phone: (732) 388-8800<br>NAICS: 441110 | |
| Resolution: New Resolution | | | | | |
| Officer of Rahway Auto Resource Inc.: | | | | Title: Director | |
| Jose E. Collado<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Officer<br>County: | Cust #:<br>Phone: | |
| Officer of Rahway Auto Resource Inc.: | | | | Title: Director | |
| Lee V. Morant, Jr.<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Officer<br>County: | Cust #:<br>Phone: | |
| Officer of Rahway Auto Resource Inc.: | | | | Title: Director | |
| Alexis P. Collantes<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Officer<br>County: | Cust #:<br>Phone: | |
| Jose E. Collado<br><br>Street Address:8 Aberdeen Drive<br>Primary Phone: | 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<br><br>Old Bridge<br>Ext: | Individual<br>Guaranty Amount:<br>NJ 08857<br>Instructions: | Guarantor<br>Unlimited<br>County: | Cust #:<br><br>Phone: | |
| Lee V. Morant, Jr.<br><br>Street Address:1 Lowell Place<br>Primary Phone: | 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<br><br>West Orange<br>Ext: | Individual<br>Guaranty Amount:<br>NJ 07052-3711<br>Instructions: | Guarantor<br>Unlimited<br>County: | Cust #:<br><br>Phone: | |
| Alexis P. Collantes<br><br>Street Address:1200 Georgia Street<br>Primary Phone: | 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<br><br>Rahway<br>Ext: | Individual<br>Guaranty Amount:<br>NJ 07065<br>Instructions: | Guarantor<br>Unlimited<br>County: | Cust #:<br><br>Phone: | |
| Essex Motors Inc<br><br>Street Address:931-935 Saint Georges Avenue<br>Primary Phone: | 46-3274921<br><br>Rahway<br>Ext: | Corporation<br>Guaranty Amount:<br>NJ 07065<br>Instructions: | Guarantor<br>Unlimited<br>County: | Cust #:<br><br>Phone: | |
| Resolution: New Resolution | | | | | |
| Officer of Essex Motors Inc: | | | | Title: President | |
| Lee V. Morant, Jr.<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Officer<br>County: | Cust #:<br>Phone: | |
| Trinity MCC Realty, LLC<br><br>Street Address:1600 US Highway 1<br>Primary Phone: | 84-3771017<br><br>Rahway<br>Ext: | Limited Liability Company<br>Guaranty Amount:<br>NJ 07065<br>Instructions: | Guarantor<br>Unlimited<br>County: | Cust #:<br><br>Phone: | |
| Resolution: New Resolution | | | | | |
| Member of Trinity MCC Realty, LLC: | | | | Title: Member | |
| Lee V. Morant<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Member<br>County: | Cust #:<br>Phone: | |
| Member of Trinity MCC Realty, LLC: | | | | Title: Member | |
| Alex Collantes<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Member<br>County: | Cust #:<br>Phone: | |
| Member of Trinity MCC Realty, LLC: | | | | Title: Member | |
| Joseph Collado<br>Street Address:<br>Primary Phone: | <br><br>Ext: | Individual<br><br>Instructions: | Member<br>County: | Cust #:<br>Phone: | |

### TRANSACTION SUMMARY

Transaction No.: 81969
Product Category:
Loan Policy: Commercial

Product Description:
Category of Purpose: Business, Agricultural and All Other
Specific Loan Purpose:

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 63 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 4-9   Filed 05/08/26   Page 33 of 60 PageID:
337

Loan No: 0200270

**BOARDING DATA SHEET**
**(Continued)**

Page 2

## CLASSIFICATION DATA

Universal Loan Identifier:
Application No:
Application Date:
Loan No: **0200270**
Loan Date: **01-17-2020**
Officer: **03833 - Hopkins, John**
Processor No: **APB Hopkins, John**
Collateral Code:
Charge Code:
Call Code:
User Code 3:
User Code 6:

Branch: **060 Edison Office**
Dept:
Division:
Region:
Loan Type: **Revolving Line of Credit**
Loan Class: **New Loan**
Purpose Code: **FB62**
Class Code: **FB16-AltRt**
User Code 1:
User Code 4:
User Code 7:

Employee Loan: **No**
Restricted Access: **No**
Reg O Loan:
Comments:

Portfolio Code:
Host System:
User Code 2: **FB12-OLC $1406.00**
User Code 5:
User Code 8: **326940.28 - FBK**

## COLLATERAL SUMMARY

| Type | SubType | Description | | State | Value | Purchase Money | Collateral Code |
|------|---------|-------------|--|-------|-------|----------------|-----------------|
| UCC | Described | All Inventory, Chattel Paper, Accounts and General Intangibles. All present and future new and used vehicles and all accessories and appurtenances thereto, as well as all parts, inventory now owned or hereafter acquired and the proceeds thereof | | NJ | | | |

Owner(s):

Rahway Auto Resource Inc.
Street Address:1500 US Highway 1
Mailing Address:
Primary Phone: (732) 388-8800

22-3670925   Corporation
Rahway        NJ 07065-5622

Ext:                         Instructions:

County:
County:

Cust #:
Phone: (732) 388-8800
NAICS: 441110

Resolution: **New Resolution**

Officer of Rahway Auto Resource Inc.:                                                    Title: **Director**

Jose E. Collado
Street Address:
Primary Phone:

Individual

Ext:              Instructions:

Officer
County:

Cust #:
Phone:

Officer of Rahway Auto Resource Inc.:                                                    Title: **Director**

Lee V. Morant, Jr.
Street Address:
Primary Phone:

Individual

Ext:              Instructions:

Officer
County:

Cust #:
Phone:

Officer of Rahway Auto Resource Inc.:                                                    Title: **Director**

Alexis P. Collantes
Street Address:
Primary Phone:

Individual

Ext:              Instructions:

Officer
County:

Cust #:
Phone:

## PAYMENT DATA

REVOLVING LINE OF CREDIT
(Variable Rate)

| | Financed | In Cash |
|--|----------|---------|
| AMOUNT REQUESTED: | $4,000,000.00 | |
| PREPAID FINANCE CHARGES: | 0.00 | |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $4,000,000.00 | $0.00 |

PAYMENT CALCULATION:

| No. of Pmts | Amount | Due |
|-------------|--------|-----|
| 12 | Interest | Monthly Interest Payments beginning 02-15-2020 |
| 1 | $4,000,447.89 | Final Principal and Accrued Interest Payment is due On Demand |

Disbursement Date:          01-17-2020
Due Date:                   On Demand
Interest Reserve:           $0.00

INTEREST RATE SELECTION:

Interest Method:            365/360

Interest Rate:              4.031 at 365/360.
Interest Rate Based On:     2.250 pts. over index adjusted each Month.
Current Index:              1.781
Interest Rate is:           Not Rounded

| | APR | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|--|-----|----------------|-----------------|-------------------|
| e | 4.087% | $81,963.67 | $4,000,000.00 | $4,081,963.67 |

e means estimate
All calculations are based on an assumed maturity of one year.

LaserPro, Ver. 19.2.0.042  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ T:\LPL\COM\LOFN.PL\10.FC  TR-41959

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 64 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 50   Filed 05/08/26   Page 34 of 60 PageID:
338

*100000000000200270074000000000000000053200000000*

# LOAN CHECKLIST

| Borrower: | Rahway Auto Resource Inc.<br>1500 US Highway 1<br>Rahway, NJ 07065-5622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>633 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |
|---|---|---|---|

## DESCRIPTION

_____ Loan Type: This is a Variable Rate Nondisclosable Revolving Line of Credit Loan to a Corporation for $4,000,000.00 due on demand. The reference rate (index) is added to the margin of 2.250%, resulting in an initial rate of 4.031.

_____ Transaction Number: 81969.

_____ Collateral: This transaction is secured by the following: The collateral described in the security agreement(s) between Lender and Borrower, including without limitation intended accounts receivable, inventory and general intangibles pledged by Borrower;

Guaranties of Jose E. Collado, Lee V. Morant, Jr., Alexis P. Collantes, Essex Motors Inc and Trinity MCC Realty, LLC.

_____ Officer: 03833 - Hopkins, John

_____ Processor: APB Hopkins, John

_____ Standard Product: No Standard Product has been selected for this transaction.

_____ Standard Policy: Universal Comm'l Loan-PA-Demand.

_____ Branch Number and Name: 050 — Edison Office.

_____ General Lending Policy for this transaction is governed by New Jersey law. Collateral documents printed through LASER PRO for this transaction will be governed by the collateral law state as specified on the Collateral Summary Screen for each piece of collateral.

## LOAN DOCUMENTS

____ Loan Checklist
____ Corporate Resolution: Rahway Auto Resource Inc.
____ LLC Resolution: Trinity MCC Realty, LLC
____ Promissory Note
____ NJ Commercial Guaranty: Lee V. Morant, Jr.
____ NJ Commercial Guaranty: Alexis P. Collantes
____ NJ Commercial Security Agreement: All Inventory, Chattel Paper, Accounts and General Intangibles. All present and future new and used vehicles and all accessories and appurtenances thereto, as well as all parts, inventory now owned or hereafter acquired and the proceeds thereof; owned by Rahway Auto Resource Inc.
____ REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT - **REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT**

____ Loan Request Summary
____ Corporate Resolution: Essex Motors Inc
____ Business Loan Agreement
____ NJ Commercial Guaranty: Trinity MCC Realty, LLC
____ NJ Commercial Guaranty: Essex Motors Inc
____ NJ Commercial Guaranty: Jose E. Collado
____ Landlord's Release
____ NJ National UCC Financing Statement (Rev. 04/20/11): All Inventory, Chattel Paper, Accounts and Gen
____ National UCC Instructions 04/20/11
____ National UCC Addendum Instructions 04/20/11
____ Internal Transfer Form - New Internal Transfer Authorization
____ Disbursement Request and Authorization
____ Boarding Data Sheet: Transaction 81969

This list of documents may not include all the documents needed for this transaction. Applications, verifications, and other specialized documents may be needed.

## ENTRY OMISSION WARNINGS TO LENDER

_____ **NO ADDRESS.** The address of Jose E. Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Jose E. Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

_____ **NO STATE.** The state for the address of Jose E. Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Jose E. Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

_____ **NO ADDRESS.** The address of Lee V. Morant, Jr. has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Lee V. Morant, Jr. has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

_____ **NO STATE.** The state for the address of Lee V. Morant, Jr. has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Lee V. Morant, Jr. has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

_____ **NO ADDRESS.** The address of Alexis P. Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Alexis P. Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

_____ **NO STATE.** The state for the address of Alexis P. Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Alexis P. Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

_____ **NO ADDRESS.** The address of Lee V. Morant has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Lee V. Morant has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

_____ **NO STATE.** The state for the address of Lee V. Morant has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Lee V. Morant has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

_____ **NO ADDRESS.** The address of Alex Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Alex Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 65 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 19    Filed 05/08/26    Page 35 of 60 PageID:
339

## LOAN CHECKLIST
**(Continued)**

Loan No: 0200270                                                                              Page 2

_____ **NO STATE.** The state for the address of Alex Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Alex Collantes has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

_____ **NO ADDRESS.** The address of Joseph Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0036S**

_____ **NO CITY.** The city for the address of Joseph Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0037S**

_____ **NO STATE.** The state for the address of Joseph Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0020S**

_____ **NO ZIP CODE.** The zip code for the address of Joseph Collado has not been entered on the appropriate Customer Details Screen. **2GLEAS0021S**

In processing this loan, any omission warnings in this "Entry Omissions" section should be reviewed as provided below.

### ADVISORY WARNINGS TO LENDER

_____ **PRIVACY_FCRA.** You have not created a privacy policy in General System Setup (GSS). Federal law may require that you deliver a privacy policy. The GSS privacy policy setup includes the requirements of Title V of the Gramm-Leach-Bliley Act, its implementing regulations and the Fair Credit Reporting Act (FCRA). If you share information with affiliates and want to provide the sharing information disclosure and opt out required by the FCRA as part of the application or loan transaction, then you must enter a privacy policy in GSS. Consult your legal counsel or compliance officer with questions about complying with the privacy regulations and the FCRA. **3BLEAS9906S**

_____ **NJ FINANCING STATEMENT CONTENT.** You have produced a UCC Financing Statement for collateral located in the state of New Jersey. N.J.S.A. 12A:9-502 requires that a financing statement must, among other things, indicate that the collateral is within the scope of Chapter 9, pursuant to 12A:9-102 and 12A:9-109. LaserPro does not include New Jersey specific language on the Financing Statement to address this requirement. Our NJ counsel recommends that users include a statement such as "The foregoing collateral is within the scope of the Article 9 of the Uniform Commercial Code as in effect in New Jersey, pursuant to New Jersey Code 12A:9-102 and 12A:9-109" If applicable within the Collateral description field on the Financing Statement to address this requirement. If you elect to identify the assets secured by the financing statement as "All Assets", you may also want to include the following statement at the end of the sentence discussed above: "An indication of "All Assets" means all assets within such scope." Consult your institution's legal counsel with any questions. **3CFSNJ0001S**

_____ **WAIVE JURY.** You have selected "Waive Jury" in your Guaranty Language and/or your Promissory Note Language Policy Components. According to our Legal Counsel, Waiver of Jury may not legally be invoked in New Jersey under some circumstances. You should consult your legal counsel to determine when and if this provision can be used in New Jersey. **3CLESS0008S**

_____ **STATUTE CHOSEN.** A lending statute selection has been made previously in this transaction. If anything has been changed since that selection was made, verify that the lending statute selection for this transaction continues to be appropriate. Consult your legal counsel if you have questions. **3CLEAS1311S**

_____ **365/360.** A 365/360 interest calculation method has been selected for this loan. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents. Before committing to this interest calculation method, you should consult your legal counsel or compliance officer. LaserPro offers the option of making the chosen 365/360 interest calculation method more conspicuous by including a line for the borrower to initial the "Interest Calculation Method" paragraph. This option has not been chosen for this loan. Additionally, LaserPro offers the option to add the following statement in the "Interest Calculation Method" paragraph: "This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note." Including this language alerts your customers to the effect of the 365/360 interest calculation method. This option has also not been chosen for this loan. Consult your legal counsel if you have questions. **3BLEAS0160S**

_____ **NO PRIVACY FORM.** Beginning with v.5.59/6.12, Old Form based privacy policies were removed from GSS. The Assigned Policy in GSS is an Old Form based policy. Therefore, no privacy notice has printed in the transaction. Set up and assign a Model Form based privacy policy in GSS to produce a privacy notice in this transaction. **3BLEAS0202S**

In processing this loan, any warnings in this "Advisory Warnings" section should be reviewed as provided below.

### CRITICAL WARNINGS TO LENDER

In processing this loan, any warnings in this "Critical Warnings" section should be reviewed as provided below.

### UCC FINANCING STATEMENT WARNINGS

#### NEW JERSEY UCC FILING INFORMATION

**Electronic Filing Advisory**
Generally, this state filing office only accepts electronic delivery of UCC and/or EFS records. Paper documents generated in LaserPro may not be suitable for filing purposes. Consult your legal counsel if you have questions.

**Central Filing:**    * UCC Financing Statement should be filed with the New Jersey Department of Revenue.

        **Mailing:**    New Jersey Department of Treasury/Office of the Treasurer
                Division of Revenue/UCC
                P.O. Box 303
                Trenton, NJ  08625-0303

        **Phone:**    (609) 292-9292

        **Fees:**    Consult the following website to obtain current filing information, including information regarding filing fees: www.state.nj.us/treasury/revenue

In processing this loan, all UCC Financing Statement warnings appearing above should be reviewed.

### CHECKLIST WARNINGS

In processing this loan, all warnings appearing above should be reviewed. To generate correct closing documents, it is important to visit and make appropriate selections on all applicable details windows, such as collateral details windows. All closing documents should be reviewed by your compliance officer or legal counsel as specified in the LaserPro Setup Guide. If you have questions about why LaserPro has generated any warning, visit the Finastra Customer Center at https://customercenter.dh.com to log into our online self-service Case Management system. If you have legal questions about these warnings or this loan or what action to take, you should seek the advice of your compliance officer or legal counsel.

LaserPro, Ver. 19.3.0.042  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - NJ  N:\LPL\COM\CFNLP\L\A05.FC  TR-61968

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 66 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 29    Filed 05/08/26    Page 36 of 60 PageID:
340

BANK: Fulton Bank, N.A. ("Bank")

LOAN #: 0200270 (the "Loan")

BORROWER: Rahway Auto Resource Inc. ("Borrower")

DATE: January 17, 2020

## NAME AFFIDAVIT

The undersigned, being a guarantor of the Loan, does hereby declare and certify to, and covenant and agree with, the Bank, its successors and assigns, for good and valuable legal consideration, and intending to be legally bound, that:

1.    The legal name of the undersigned is Lee V. Morant, Jr. However, the undersigned has also used or been shown as having the following other name(s):

Lee V. Morant


2.    Notwithstanding such other name(s), the undersigned is one and the same person as shown in the aforesaid name(s). Without limiting the foregoing, any and all documents executed for the benefit of the Bank in such other name(s) shall be given the maximum legal effect available, as though executed in the undersigned's legal name.

3.    This affidavit is made for the purpose of inducing the Bank to hold settlement under the Loan and/or to extend, renew, amend or otherwise provide credit under the Loan.

4.    The undersigned hereby agrees to indemnify and hold the Bank harmless against any loss, claim, damage, liability, cost, or expense (including, without limitation, reasonable attorneys' fees and costs) incurred as a result of anything in this Affidavit which proves to be untrue, inaccurate, or ineffective in any respect.

**[SIGNATURE APPEARS ON FOLLOWING PAGE]**

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 67 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 9   Filed 05/08/26   Page 37 of 60 PageID:
341

IN WITNESS WHEREOF, I have signed this Name Affidavit for the express benefit of the Bank as of the date above written.

_____
Lee V. Morant, Jr.

State of _____ NJ _____

County of _____ Morris _____

Subscribed and sworn (affirmed) before me this __17__ day of __January__, 2020.

_____
Notary Public

State of _____

Acting in the County of _____

My Commission Expires: _____

EDWARD McCLOUD
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 26, 2022

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 68 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 54    Filed 05/08/26    Page 38 of 60 PageID:
342

BANK: Fulton Bank, N.A. ("Bank")

LOAN #: 0200270 (the "Loan")

BORROWER: Rahway Auto Resource Inc. ("Borrower")

DATE: January 17, 2020

## NAME AFFIDAVIT

The undersigned, being a guarantor of the Loan, does hereby declare and certify to, and covenant and agree with, the Bank, its successors and assigns, for good and valuable legal consideration, and intending to be legally bound, that:

1.    The legal name of the undersigned is Jose E. Collado. However, the undersigned has also used or been shown as having the following other name(s):

Joseph Collado

2.    Notwithstanding such other name(s), the undersigned is one and the same person as shown in the aforesaid name(s). Without limiting the foregoing, any and all documents executed for the benefit of the Bank in such other name(s) shall be given the maximum legal effect available, as though executed in the undersigned's legal name.

3.    This affidavit is made for the purpose of inducing the Bank to hold settlement under the Loan and/or to extend, renew, amend or otherwise provide credit under the Loan.

4.    The undersigned hereby agrees to indemnify and hold the Bank harmless against any loss, claim, damage, liability, cost, or expense (including, without limitation, reasonable attorneys' fees and costs) incurred as a result of anything in this Affidavit which proves to be untrue, inaccurate, or ineffective in any respect.

**[SIGNATURE APPEARS ON FOLLOWING PAGE]**

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 69 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 55   Filed 05/08/26   Page 39 of 60 PageID:
343

IN WITNESS WHEREOF, I have signed this Name Affidavit for the express benefit of the Bank as of the date above written.

_____
Jose E. Collado

State of _____ N J _____

County of ___ Morris _____

Subscribed and sworn (affirmed) before me this __17__ day of January 2020.

_____
Notary Public

State of _____

Acting in the County of _____

My Commission Expires: _____

EDWARD McCLOUD
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 26, 2022

2

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 70 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 45-6    Filed 05/08/26    Page 40 of 60 PageID:
344

BANK: Fulton Bank, N.A. ("Bank")

LOAN #: 0200270 (the "Loan")

BORROWER: Rahway Auto Resource Inc. ("Borrower")

DATE: January 17, 2020

## NAME AFFIDAVIT

The undersigned, being a guarantor of the Loan, does hereby declare and certify to, and covenant and agree with, the Bank, its successors and assigns, for good and valuable legal consideration, and intending to be legally bound, that:

1.      The legal name of the undersigned is Alexis P. Collantes.  However, the undersigned has also used or been shown as having the following other name(s):

Alex Collantes

2.      Notwithstanding such other name(s), the undersigned is one and the same person as shown in the aforesaid name(s).  Without limiting the foregoing, any and all documents executed for the benefit of the Bank in such other name(s) shall be given the maximum legal effect available, as though executed in the undersigned's legal name.

3.      This affidavit is made for the purpose of inducing the Bank to hold settlement under the Loan and/or to extend, renew, amend or otherwise provide credit under the Loan.

4.      The undersigned hereby agrees to indemnify and hold the Bank harmless against any loss, claim, damage, liability, cost, or expense (including, without limitation, reasonable attorneys' fees and costs) incurred as a result of anything in this Affidavit which proves to be untrue, inaccurate, or ineffective in any respect.

### [SIGNATURE APPEARS ON FOLLOWING PAGE]

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 71 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 17    Filed 05/08/26    Page 41 of 60 PageID:
345

IN WITNESS WHEREOF, I have signed this Name Affidavit for the express benefit of the Bank as of the date above written.

_____
Alexis P. Collantes

State of _____NJ_____

County of ___Morris___

Subscribed and sworn (affirmed) before me this __17__ day of __January__, 2020.

Notary Public

State of _____

Acting in the County of _____

My Commission Expires: _____

EDWARD McCLOUD
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 26, 2022

2

Case 2:26-cv-04747-MEF-JSA     Document 33     Filed 06/11/26     Page 72 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA     Document 58     Filed 05/08/26     Page 42 of 60 PageID:
346

## REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT

| | | | |
|---|---|---|---|
| Borrower: | Rahway Auto Resource Inc.<br>1500 US Highway 1<br>Rahway, NJ 07066-5622 | Lender: | Fulton Bank, N.A.<br>Edison Office<br>533 Fellowship Road<br>Regional Corporate Address<br>Mount Laurel, NJ 08054 |

REGULATION B NOTICE OF INTENT TO APPLY FOR JOINT CREDIT

Regulation B and the Equal Opportunity Act requires that a lender obtain evidence of each loan applicants intent to apply for joint credit at the time of application.

If this is an application for joint credit, Applicant and Co-Applicant(s) each agree that we intend to apply for joint credit (sign below):

Applicant Signature _____     Date 1/1/2020 Jose Couaso

Co-Applicant Signature _____     Date 1/17/2020 Lee Moren

Co-Applicant Signature _____     Date 1-17-2020 Alexis P. Collantes

Co-Applicant Signature _____     Date 1/17/2020 Lee Mont

LaserPro, Ver. 19.2.0.042 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - NJ N:\LPL\COM\LOFL\PL\G63.FC TR-41970

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address) |

**Fulton Bank, N.A.**
**One Penn Square, P.O. Box 4887**
**ATTN: Post-Closing Commercial Documentation**
**Lancaster, PA 17602**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Rahway Auto Resource Inc.** | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| **1500 US Highway 1** | | **Rahway** | **NJ** | **07065-5622** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Fulton Bank, N.A.** | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| **533 Fellowship Road, Regional Corporate Address** | | **Mount Laurel** | **NJ** | **08054** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**All Inventory, Chattel Paper, Accounts and General Intangibles. All present and future new and used vehicles and all accessories and appurtenances thereto, as well as all parts, inventory now owned or hereafter acquired and the proceeds thereof.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Finastra
555 SW Morrison, Suite 300, Portland, OR 97204-1440

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 74 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 9    Filed 05/08/26    Page 44 of 60 PageID:
460
348

Document Center                                                          Page 1 of 1

Logout



CORPORATION SERVICE COMPANY

My Center    Search Center    Filing Center    Document Center    Financial Center    Help Center

Add Note    Existing Searches    Help

Order Details                                                    Welcome Judy Strang

**Order Information**

Cost Center  050
Loan Number  0200270
Affiliate  Fulton Bank, N.A.
Order Number  175982153
Order Status  New
Order Date  1/16/2020 9:01 PM
Subject  Rahway Auto Resource Inc.
Service(s)
  UCC Filing - New Jersey, (S.O.S.)
  Harland UCC Filing - New Jersey, (S.O.S.)
Order Notes
  1/21/2020 - Filing approved by Judy Strang

( Edit Order )  ( Additional Information )

**Actions**

( Duplicate )        ( Hide )

**Forms**

( View All )

( View )   National UCC1
Issues viewing PDF? Click view

**Validator Messages**

❷ New Jersey requires that the name of
the secured party or representative of
the secured party be sufficient to
disclose the identity of the secured
party or representative. New Jersey
requires the collateral statement to
indicate that the collateral is within
the scope of Chapter 9, Secured
Transactions. New Jersey's e-file
system does not permit an initial
financing statement to indicate an
assignment.

( Validate Order )

**Validator Legend**

❷- Informational
⚠- Warning
❌- Error

1/21/2020 : Account #326940
Fulton Bank, N.A.

Copyright © 2020 Corporation Service Company®. All rights reserved. Privacy Policy

The Company | Services & Products | News & Events | Contact Us | Logout

# EXHIBIT "C"

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 76 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 29   Filed 05/08/26   Page 46 of 60 PageID:
350

8:59                                                .ıl  🛜  5

## Fulton v. Trinity, et al - 24-cv-9585 -...   ˅   ✕

Robert J. Brener (RB 3764)
DUANE MORRIS LLP
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932-1007
(973) 424-2000
*Attorneys for Plaintiff Fulton Bank, N.A.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FULTON BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>TRINITY AUTO, LLC, ALEXIS P. COLLANTES, JOSE E. COLLADO, LEE V. MORANT, JR., AVENUE MOTORS LLP, and RAILWAY AUTO RESOURCES INC.<br><br>Defendants. | Civil Action No. 24-9585<br><br>ORDER |

Plaintiff Fulton Bank, N.A. ("Fulton") dismisses this action with prejudice and without costs against Defendants Trinity Auto, LLC, Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto Resources Inc. LLC.

The parties are responsible for their own costs, expenses, and fees, including attorneys' fees.

The Court terminates the replevin bond requirement; Fulton is released from any further obligation with respect to filed bond no. 7901221287.

DM3\11441655.1

SO ORDERED.

Dated: June 11, 2025

_____
BRIAN R. MARTINOTTI, U.S.D.J.

   

# EXHIBIT "D"

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 78 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 49    Filed 05/08/26    Page 48 of 60 PageID:
352
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 1 of 13   Trans ID: LCV202639393

Robert J. Brener (Attorney ID #042671992)
Arjun D. Shah (Attorney ID #906392012)
**DUANE MORRIS LLP**
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932-1007
(973) 424-2000

*Attorneys for Plaintiff*
*Fulton Bank, N.A.*

| | |
|---|---|
| FULTON BANK, N.A.,<br><br>            Plaintiff,<br>v.<br><br>ALEXIS P. COLLANTES, JOSE E. COLLADO, LEE V. MORANT, JR., AVENUE MOTORS LLP, and RAHWAY AUTO RESOURCE INC.<br><br>            Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.<br><br>CIVIL ACTION<br><br>**AMENDED COMPLAINT** |

Plaintiff, Fulton Bank, N.A. ("Fulton"), by its attorneys, Duane Morris LLP, brings this

Amended Complaint against defendants Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr.,

Avenue Motors LLP, and Rahway Auto Resource Inc. (collectively, the "Defendants" or

"Guarantors"), and alleges as follows:

## STATEMENT OF THE CASE

1.       Fulton provides floorplan inventory financing to dealerships for the purchase and

sale of new and used vehicles. In general, such lending is made possible through loan agreements

providing for an open-ended credit arrangement secured by, among other things, personal

guaranties by the dealerships' owners and other related entities.

2.       In the instant case, a particular dealership, Trinity Auto, LLC ("Trinity"), has

defaulted on its obligations under its loan and forbearance agreements and the Defendants have

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 79 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 16-9    Filed 05/08/26    Page 49 of 60 PageID:
353
ESX-L-000122-26    01/07/2026 1:42:37 PM    Pg 2 of 13    Trans ID: LCV202639393

likewise defaulted under their guaranties to pay Trinity's obligations. The foregoing defaults have caused immediate, severe, and ongoing damage to Fulton, for which Fulton is entitled to be made whole by the payment of money damages.

## PARTIES

3.    Fulton is a national bank association organized under the laws of the United States of America with its main office located at One Penn Square, P.O. Box 4887, Lancaster, PA, 17602.

4.    Upon information and belief, defendant Alexis P. Collantes is an individual residing at 1681 Raritan Road, Scotch Plains, New Jersey 07076-2937 and is a guarantor of Trinity.

5.    Upon information and belief, defendant Jose E. Collado is an individual residing at 295 Wilson Avenue, Township of Washington, New Jersey 07676-4728 and is a principal and guarantor of Trinity.

6.    Upon information and belief, defendant Lee V. Morant, Jr. is an individual residing at 1 Lowell Place, West Orange, New Jersey 07052-3711 and is a principal and guarantor of Trinity.

7.    Upon information and belief, defendant Avenue Motors LLP is a New Jersey corporation, with a principal place of business at 1453 Lawrence Street, Rahway, New Jersey 07065-5177, and is a guarantor of Trinity.

8.    Upon information and belief, Rahway Auto Resource Inc. is a New Jersey corporation, with a principal place of business at 1500 Highway US I, Rahway, New Jersey, NJ 07065-5622, and is a guarantor of Trinity.

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 80 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 466   Filed 05/08/26   Page 50 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 3 of 13   Trans ID: LCV202639393

## STATEMENT OF FACTS

### I.    The Loan Documents and Guaranties

9.     On or about March 1, 2023, Fulton and Trinity entered into a certain Loan Agreement, not to exceed the principal sum of Twelve Million Five Hundred Thousand Dollars ($12,500,000.00) (the "Floorplan" or "Loan").

10.    To evidence its indebtedness under the Loan, Trinity executed and delivered to Fulton a Line of Credit Note dated March 1, 2023 in the principal amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000) (the "Note"). (The Loan Agreement and Note are hereinafter referred to collectively as the "Loan Documents.")

11.    The Line of Credit under the Loan Documents provides floorplan financing for the purchase of new and used vehicles. The credit line limit is $6,000,000.00 for new vehicles and $6,500,000.00 for used vehicles.

12.    As security for repayment of the Loan and performance of Trinity's obligations under the Loan Documents, on March 1, 2023, Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto Resource Inc. (previously referred to collectively as the "Defendants" or "Guarantors") each executed a Guaranty.

13.    Each Guarantor, among other things, absolutely and unconditionally guaranteed to Fulton the full, prompt and unconditional payment, when due, whether by acceleration or otherwise, of any and all loans, advances, debts, liabilities, agreements, obligations, covenants and duties of Trinity to Fulton of any kind or nature, present or future, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising and all costs and expenses of Fulton incurred in the documentation, negotiation, modification, enforcement,

3

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 81 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 40-9    Filed 05/08/26    Page 51 of 60 PageID:
ESX-L-000122-26    01/07/2026 1:42:37 PM    Pg 4 of 13    Trans ID: LCV202639393
355

collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the "Obligations").

14.    In addition, each of the Guaranties states: "This is a guaranty of payment and not of collection and [Fulton] shall not be required, as a condition of the Guarantor's liability, to make any demand upon or to pursue any of its rights against [Trinity], or to pursue any rights which may be available to it with respect to any other person who may be liable for the payment of the Obligations."

15.    Further, each of the Guaranties states: "This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full, and [Fulton] has terminated this Guaranty."

16.    Finally, under the Guaranties, "the occurrence of any of the following shall be an **"Event of Default"**: (i) any Event of Default (as defined in any of the Obligations); (ii) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (iii) the Guarantor's failure to perform any of its obligations hereunder . . . Upon the occurrence of any Event of Default, (a) the Guarantor shall pay to [Fulton] the amount of the Obligations; (b) [Fulton] in its discretion may exercise with respect to any collateral any one or more of the rights and remedies provided a secured party under the applicable version of the Uniform Commercial Code; and (c) [Fulton] in its discretion may exercise from time to time any other rights and remedies available to it at law, in equity or otherwise.

17.    Pursuant to the Loan Documents and Guaranties, the outstanding principal balance and any accrued but unpaid interest shall be due and payable on demand by Fulton.

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 82 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 40-9    Filed 05/08/26    Page 52 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 5 of 13   Trans ID: LCV202639393
356

18.     Pursuant to the Loan Documents and Guaranties, Trinity and/or the Guarantors must pay to Fulton without demand an amount equal to the amount advanced under the Loan to finance the purchase of a motor vehicle within eight (8) business days of the date on which Trinity sold such motor vehicle ("Payment Upon Sale of Motor Vehicles").

19.     The Loan, in addition to being payable on demand, is subject to an annual review ("Annual Review"). The first Annual Review was May 1, 2024.

20.     Pursuant to the Loan Documents and Guaranties, an "Event of Default" occurs under the Note upon, among things: (i) the nonpayment of any principal, interest or other indebtedness under the Note when due; (ii) the occurrence of any event of default or default and the lapse of any notice or cure period under any Loan Document or any other debt, liability or obligation to Fulton of Trinity or the Guarantors; (iii) the filing by Trinity or any Guarantor of any proceeding in bankruptcy or similar proceeding...(viii) any material adverse change in Trinity's or the Guarantors' business, assets, operations, financial condition or results of operations...or (xiii) Trinity's or the Guarantors' failure to observe or perform any covenant or other agreement with Fulton contained in any Loan Document or any other documents now or in the future evidencing or securing the obligations of Trinity or the Guarantors to Fulton.

21.     The Loan Documents and Guaranties provide, among other things, that upon the occurrence of an Event of Default, Fulton shall be under no further obligations to make advances under the Loan Documents and has the right, among its other rights and remedies, to declare the entire outstanding principal amount of the Loan, interest owed thereon and all other amounts due thereunder immediately due and payable.

22.     Pursuant to the Loan Documents and Guaranties, if Trinity or the Guarantors fail to make any payment of principal, interest, or other amount when due, and such payment is not

5

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 83 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 469   Filed 05/08/26   Page 53 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 6 of 13   Trans ID: LCV202639393
357

received within ten (10) calendar days of its due date, they shall pay a late charge equal to five percent (5.0%) of the amount of such payment (the "Late Charge"). Such ten (10) day period shall not be construed in any way to extend the due date of any such payment.

23.     Pursuant to the Loan Documents and Guaranties, upon the occurrence of any Event of Default and during the continuance thereof, interest shall accrue on the Note at a rate per annum which shall be five (5.0) percentage points in excess of the interest rate that would otherwise be applicable, but not more than the maximum rate allowed by law (the "Default Rate").

24.     Pursuant to the Loan Documents and Guaranties, Trinity and the Guarantors must pay on demand, to the extent permitted by law, all costs and expenses incurred by Fulton in the enforcement of its rights under the Loan Documents and in any security therefor, including without limitation reasonable fees and expenses of Fulton's counsel.

## II.   Defendants' Failure to Pay the Floorplan Balance Upon Demand, Failure to Timely Pay Advances, Forbearance Agreement and Subsequent Defaults

25.     On January 30, 2024, and in accordance with the Loan Documents, Fulton advised Trinity in writing that Fulton would not be renewing the Note on the Maturity date of May 1, 2024. In order to enable Trinity to obtain other financing, Fulton gave Trinity until June 26, 2024 to pay off the amounts outstanding under the Note (i.e. the Floorplan).

26.     Trinity failed to pay off the Floorplan by June 26, 2024. Thereafter on July 3, 2024, Fulton sent Trinity and the Guarantors a Notice of Default notifying Defendants that their failure to pay the Floorplan constituted a default under the Loan Documents and Guaranties. Notwithstanding the default, Fulton agreed not to exercise its rights and remedies under the Loan Documents and Guaranties and to extend Defendants' time to pay off the Floorplan until August 15, 2024.

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 84 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 70    Filed 05/08/26    Page 54 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 7 of 13   Trans ID: LCV202639393

27.    Defendants failed to pay the outstanding Floorplan balance by August 15, 2024 despite demand by Fulton, which failure to pay constituted an Event of Default under the Loan Documents and Guaranties.

28.    In addition, Trinity sold floor-planned vehicles but failed to timely pay Fulton the advances, which failure to pay also constitutes an Event of Default under the Payment Upon Sale of Motor Vehicles provision of the Loan Documents and Guaranties.

29.    On or about December 17, 2024, Fulton, Trinity, Jose E. Collado, and Lee V. Morant, Jr. entered into a certain Forbearance Agreement (the "Forbearance Agreement"), pursuant to which, among other things: (i) the existing Loan Documents and Guaranties were restated and affirmed by all Guarantors, including those Guarantors not a party to the Forbearance Agreement; (ii) the Loan remained in default and payable by Defendants in full, without defense or offset; (iii) Defendants agreed to pay to Fulton certain partial payments due under the Loan Documents and Guaranties; (iv) Defendants agreed to pay to Fulton certain costs of enforcement and collection, including costs of lender representatives as determined by Fulton for Fulton's employees, costs of security, and attorneys' fees, including fees incurred in connection with the Forbearance Agreement and the restated Loan Documents and Guaranties (the "Costs"); (v) the interest rate of the Loan was modified to be "interest rate of prime plus 5.00%"; (vi) Defendants agreed to a 5-day repayment period on sold new vehicles, subject to elimination upon a Trigger Event (as defined hereinbelow); and (vii) Fulton agreed to forbear from taking any immediate action to collect payment in full of the obligations under the Loan Documents and Guaranties during the time period (the "Forbearance Period") commencing on the date of the Forbearance Agreement and ending on the earlier of: (a) March 17, 2025 (the "Forbearance End Date"); or (b)

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 85 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 19    Filed 05/08/26    Page 55 of 60 PageID:
ESX-L-000122-26    01/07/2026 1:42:37 PM    Pg 8 of 13    Trans ID: LCV202639393
359

the date on which Defendants fail to comply with any of the terms of the Forbearance Agreement or restated Loan Documents and Guaranties (the earliest, a "Trigger Event").

30.    Pursuant to the Forbearance Agreement, each Defendant fully released and forever discharged Fulton from all actions, causes of action, claims or demands of any nature whatsoever (in law or in equity, in tort or in contract, or otherwise), known or unknown, present or contingent, including any right for consequential or punitive damages, that any of the Defendants now have, or have ever had, from the beginning of time through and including the date of the Forbearance Agreement, including any claims in connection with any extension of credit, refusal to extend credit, waiver, acquiescence, or any other act or failure to act of Fulton.

31.    The Forbearance Period ended no later than the Forbearance End Date of March 17, 2025.

32.    Defendants failed to pay the Costs to the Bank on or before the Forbearance End Date.

33.    Defendants' failure to pay the Costs to the Bank on or before the Forbearance End Date constitutes a Trigger Event under the Forbearance Agreement and an Event of Default under the Loan Documents and Guaranties.

34.    Following the expiration of the Forbearance Agreement, on or about October 24, 2025, Fulton wrote to Defendants demanding immediate payment in full of the outstanding Floorplan balance, accrued interest and costs of collection, including attorneys' fees, and all other obligations under the Loan Documents and Guaranties.

35.    In addition, based on an audit of Trinity's vehicle sales on December 11, 2025, Defendants have failed to pay Fulton $1,461,967.78 in Floorplan advances on the new vehicles Trinity sold below:

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 86 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 29    Filed 05/08/26    Page 56 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 9 of 13   Trans ID: LCV202639393

| Year | Make | Model | Stock ID | Invoice Date | FP Code | Audit OSB |
|------|------|-------|----------|--------------|---------|-----------|
| 2026 | CADI | CT5 PREMIUM LUXURY | 26022 | 8/27/2025 | NEW | $ 53,348.34 |
| 2026 | CADI | CT5 PREMIUM LUXURY | 26020 | 8/27/2025 | NEW | $ 52,770.97 |
| 2025 | CADI | LYRIQ LUXURY | 25076 | 5/20/2025 | NEW | $ 62,144.44 |
| 2025 | CADI | ESCALADE ESV SPORT PLATINUM | 31450P | 10/22/2025 | NEW | $ 113,500.00 |
| 2025 | CADI | ESCALADE PREMIUM LUXURY | 25115 | 8/29/2025 | NEW | $ 108,079.96 |
| 2025 | CADI | XT6 PREMIUM LUXURY | 25112 | 8/20/2025 | NEW | $ 61,602.59 |
| 2025 | CADI | LYRIQ LUXURY | 25012 | 3/10/2025 | NEW | $ 62,598.72 |
| 2025 | CADI | XT5 PREMIUM LUXURY | 25123 | 11/21/2025 | NEW | $ 54,186.47 |
| 2026 | CADI | CT5 PREMIUM LUXURY | 26035 | 10/22/2025 | NEW | $ 54,179.76 |
| 2026 | CADI | CT5 SPORT | 26023 | 8/29/2025 | NEW | $ 55,988.85 |
| 2026 | CADI | CT5 SPORT | 26021 | 8/27/2025 | NEW | $ 56,011.94 |
| 2025 | CADI | XT6 PREMIUM LUXURY | 25114 | 8/21/2025 | NEW | $ 61,602.59 |
| 2025 | CADI | LYRIQ SPORT | 25093 | 6/10/2025 | NEW | $ 62,654.06 |
| 2026 | CADI | VISTIQ SPORT | 26033 | 10/17/2025 | NEW | $ 78,128.19 |
| 2025 | CADI | LYRIQ SPORT | 25128 | 11/7/2025 | NEW | $ 62,261.44 |
| 2025 | CADI | ESCALADE SPORT | 25072 | 10/21/2025 | NEW | $ 127,500.00 |
| 2026 | CADI | ESCALADE SPORT | 26036 | 10/27/2025 | NEW | $ 116,132.68 |
| 2025 | CADI | ESCALADE SPORT PLATINUM | 25119 | 9/17/2025 | NEW | $ 118,915.90 |
| 2025 | CADI | XT6 SPORT | 25129 | 11/7/2025 | NEW | $ 61,803.88 |
| 2024 | CADI | CT5 PREMIUM LUXURY | 24083L | 10/27/2023 | NEW_LOANER | $ 38,557.00 |

$ 1,461,967.78

36.     On or about December 16, 2025, Fulton wrote to Defendants notifying them that the Loan is in default. In addition to Defendants' failure to pay off the outstanding Floorplan balance, Fulton notified Defendants that their failure to pay Fulton for advances on the aforementioned new vehicles sold constitutes an Event of Default, giving rise to Fulton's right and remedies under the Loan Documents and Guaranties.

37.     To date, despite notice of default and demand for payment, the Loan Documents remain unpaid and Defendants remain in default under the Loan Documents, Guaranties and Forbearance Agreement.

9

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA   Document 33   Filed 06/11/26   Page 87 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA   Document 19   Filed 05/08/26   Page 57 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 10 of 13   Trans ID: LCV202639393
361

38.     There is now due and owing to Fulton under the Loan Documents and Guaranties, as of January 7, 2026, the total amount of $4,281,680.72, consisting of the principal sum of $3,424,935.87, unpaid, accrued interest in the amount of $559,533.14, Costs in the amount of $297,170.71, and satisfaction fees of $41.00.

## FIRST CAUSE OF ACTION
### (Breach of the Guaranties)

39.     Fulton hereby incorporates the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40.     As set forth hereinabove, Trinity obtained the Loan from Fulton.

41.     As set forth hereinabove, the Loan was evidenced by the Loan Documents.

42.     As set forth hereinabove, the Loan Documents were restated and affirmed by the Forbearance Agreement.

43.     As set forth hereinabove, the Loan Documents and Forbearance Agreement required Trinity to, among other things, make payments to Fulton upon demand and when due thereunder.

44.     As set forth hereinabove, each Defendant executed and delivered to Fulton a Guaranty whereby each Defendant, among other things, absolutely and unconditionally guaranteed to Fulton the full, prompt and unconditional payment, when due of any and all loans, advances, debts, liabilities, agreements, obligations, covenants and duties of Trinity to Fulton of any kind or nature, present or future, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising and all costs and expenses of Fulton incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (previously defined hereinabove as the "Obligations").

10

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 88 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 14    Filed 05/08/26    Page 58 of 60 PageID:
ESX-L-000122-26    01/07/2026 1:42:37 PM    Pg 11 of 13    Trans ID: LCV202639393
362

45. As set forth hereinabove, Trinity has breached and defaulted under the terms of the Loan Documents and Forbearance Agreement by, among other things, its failure to make to Fulton the payments due thereunder.

46. As set forth hereinabove, as a result of the default by Trinity, Fulton has declared the entire amount of the Loan immediately due and payable.

47. Despite demand, Defendants have failed to make payment to Fulton of the amounts owed by Trinity as required under the Guaranties.

48. The failure by Defendants to make said payment constitutes a breach of the Guaranties.

49. As a result of the breach of the Guaranties, Fulton has been damaged.

WHEREFORE, plaintiff Fulton Bank, N.A. demands judgment against defendants Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto Resource Inc., jointly and severally, in the principal amount of $3,424,935.87, plus interest, default interest, advances, late charges, collection costs, costs of suit, attorneys' fees and such further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

50. Fulton hereby incorporates the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51. As a result of Defendants' failure to repay the amounts due and owing under the Loan Documents and as required by the Guaranties, Defendants have been unjustly enriched in the principal amount of $3,424,935.87.

WHEREFORE, plaintiff Fulton Bank, N.A. demands judgment against defendants Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto

11

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 89 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 15    Filed 05/08/26    Page 59 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM    Pg 12 of 13   Trans ID: LCV202639393

Resource Inc., jointly and severally, in the principal amount of $3,424,935.87, plus interest, default interest, advances, late charges, collection costs, costs of suit, attorneys' fees and such further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### (Attorneys' Fees and Costs of Collection)

52.    Fulton hereby incorporates the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53.    Pursuant to the Loan Documents, Guaranties and Forbearance Agreement, Defendants are obligated to, among other things, pay to Fulton all costs, including attorneys' fees and court costs, incurred by Fulton in connection with the collection, enforcement and/or protection of the amounts due under the Loan Documents and the protection, defense and/or enforcement of the Guaranties.

WHEREFORE, plaintiff Fulton Bank, N.A. demands judgment against defendants Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto Resource Inc., jointly and severally, for all costs and expenses incurred by Fulton in connection with the collections of the amounts due and enforcement of Fulton's rights under the Loan Documents, Guaranties and Forbearance Agreement, including attorneys' fees and costs, and such further relief as the Court deems just and proper.

DUANE MORRIS LLP
*Attorneys for Plaintiff Fulton Bank, N.A.*

By: *s/Robert J. Brener*
ROBERT J. BRENER

Dated: January 7, 2026

12

DM3\22279613.1

Case 2:26-cv-04747-MEF-JSA    Document 33    Filed 06/11/26    Page 90 of 92 PageID:
Case 2:26-cv-04747-MEF-JSA    Document 470    Filed 05/08/26    Page 60 of 60 PageID:
ESX-L-000122-26   01/07/2026 1:42:37 PM   Pg 13 of 13   Trans ID: LCV202639393
364

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor are any other actions or arbitration proceedings contemplated by plaintiff Fulton Bank, N.A. against defendants Alexis P. Collantes, Jose E. Collado, Lee V. Morant, Jr., Avenue Motors LLP, and Rahway Auto Resource Inc. Furthermore, I am not aware of any other party who should be joined in this action.


DUANE MORRIS LLP
*Attorneys for Plaintiff Fulton Bank, N.A.*


By: *s/Robert J. Brener*
ROBERT J. BRENER


Dated: January 7, 2026

13

DM3\22279613.1

# EXHIBIT "E"

Robert J. Brener (Attorney ID #042671992)
Arjun D. Shah (Attorney ID #906392012)
**DUANE MORRIS LLP**
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932-1007
(973) 424-2000

*Attorneys for Plaintiff*
*Fulton Bank, N.A.*

| | |
|---|---|
| FULTON BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> ALEXIS P. COLLANTES, JOSE E. COLLADO, LEE V. MORANT, JR., AVENUE MOTORS LLP, and RAHWAY AUTO RESOURCE INC. <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION, ESSEX COUNTY <br> DOCKET NO. L-000122-26 <br><br> CIVIL ACTION <br><br> **NOTICE OF DISMISSAL** |

Pursuant to Rule 4:37-1(a) of the Rules of Civil Practice of the Superior Court of New Jersey, the undersigned counsel for Plaintiff Fulton Bank, N.A. hereby gives notice that the above-captioned action is voluntarily dismissed with prejudice and without costs against all defendants.

DUANE MORRIS LLP
Attorneys for Plaintiff
Fulton Bank, N.A.

By:*s/ Arjun D. Shah*
ARJUN D. SHAH

Dated: May 29, 2026